UNITED STATES of America, Plaintiff-Appellee,

v.

Rockne P. VENEMA, Defendant-Appellant.

No. 76–1442.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 17, 1977.

Decided Oct. 13, 1977.

Don Svet, Albuquerque, N.M. (Victor R. Ortega, U.S. Atty., Albuquerque, N.M. and C. Richard Baker, Asst. U.S. Atty., Santa Fe, N.M., on the brief), for plaintiff-appellee.

Robert T. Knott, Albuquerque, N.M. (Knott & Associates, Albuquerque, N.M., on the brief), for defendant-appellant.

Before SETH, PICKETT, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The overriding question in this appeal is whether the use by the police of a cannabis sniffing canine, named Chane, violated the defendant's Fourth Amendment rights. We conclude that such use did not offend the Constitution.

Rockne Venema, the defendant, first came to the attention of local New Mexico drug agents on January 27, 1976. Venema was then residing at 1968 Otowi Drive in Santa Fe, New Mexico. The local drug agents in the preceding October had arrested, and convicted another resident living at that same address for possession of marijuana. As a result of the October 1975 arrest, the local drug agents continued to keep an eye on the Otowi Drive residence.

On January 27, 1976, the agents noticed the defendant leave the Otowi Drive residence and drive in a 1974 GMC pickup, which bore a heavy coating of mud, to the Poco Storage Company in Santa Fe. The defendant took what appeared to be an empty box from his truck, and entered the building in which storage lockers were located. According to the agents, the defendant then unlocked the door to locker number 32, entered the locker, and closed the door behind him. After remaining in the locker for about five minutes, the defendant exited the locker, carrying the same box which he had brought with him. Agents testified that from the defendant's actions, the box now appeared to be much heavier. The defendant then returned to his truck. There he was observed placing the box into a utility bin behind the cab of his pickup. After locking the bin, the defendant then drove away from the Poco Storage Company and, after making one stop, returned to his home.

On the morning of the following day, January 28, 1976, the local agents returned to the Poco Storage Company with a dog trained and certified to detect the presence of either marijuana or heroin. The agents received permission of the owner of Poco Storage Company to bring the dog on the premises. The agents allowed Chane to work the side of the building where defendant's locker was located, and on three occasions Chane "alerted" in front of locker number 32. By "alerting," according to the dog's handler, the dog changes direction and paws when he smells either marijuana

or heroin. The fact that Chane alerted in front of locker number 32 indicated to the handler that the locker contained either marijuana or heroin, or both, or that such substances had very recently been in the locker.

Later on January 28, 1976, the drug agents, on affidavit before a state district court judge, obtained three search warrants, one authorizing a search of defendant's locker at the Poco Storage Company, a second authorizing a search of defendant's pickup truck, and the third authorizing a search of defendant's place of residence.

On the evening of January 28, 1976, the agents searched the defendant's locker at the Poco Storage Company, and the search revealed a considerable quantity of LSD, marijuana, and hashish. The LSD seized in this search formed the basis for count 1 in the indictment, which charged the defendant with the possession on January 28, 1976, of LSD with an intent to distribute. The marijuana seized in the search of the locker formed the basis for count 2 in the indictment, which charged the defendant with the possession on January 28, 1976, of marijuana with an intent to distribute.

On January 29, 1976, the day following the search of the defendant's locker at Poco Storage Company, the agents arrested the defendant and searched both his truck and his place of residence. These searches also revealed quantities of both marijuana and hashish, which were seized by the agents. The marijuana thus seized on January 29, 1976, formed the basis for count 3.

Prior to trial the defendant filed a motion to suppress the use at trial of the LSD and marijuana seized in the search of his locker on January 28, 1976, and he also asked that any use of the marijuana seized on the following day, i. e., January 29, 1976, also be suppressed. After hearing, the motion to suppress was denied.

Trial was to the court, sitting without a jury, and the defendant was adjudged guilty on all three counts. On count 1 defendant was sentenced to five years imprisonment with a special parole term of two years. On counts 2 and 3 the defend-

ant was given a suspended sentence and placed on probation.

Defendant now appeals his conviction, and urges what are essentially two grounds for reversal: (1) The use of Chane by the agents to "sniff out" his locker in itself constituted a search, and was not based on probable cause; (2) assuming, arguendo, that Chane's actions did not constitute a search, the affidavits were still legally insufficient to justify the issuing of the search warrants, and, with the initial search of defendant's locker being for that reason unlawful, the subsequent searches of his truck and home were "fruits of the poisonous tree." We do not agree with either of these contentions, and therefore affirm.

■ The defendant initially contends that the use of Chane by the police to sniff the air outside his locker in the Poco Storage Company was in and of itself a search, and that such search was not based on probable cause. Such being the case, according to the defendant, the ensuing searches of his locker, his truck, and his home were all fruits of the poisonous tree, and should have been suppressed at his trial. This line of argument is premised on the assumption that the actions of Chane in sniffing the air outside defendant's locker in the Poco Storage Company constituted a search. We do not agree with such premise.

The defendant rented locker number 32 from the Poco Storage Company and nothing more. He did not rent the areaway in front of his locker. Such areaway was at least semi-public in nature. The agents brought Chane onto the premises with the consent of the owner of the storage company. Chane was in the areaway outside of defendant's locker and detected odors emanating from the locker proper. It is certain that there was no physical trespass of the locker itself. Physical invasion of "house or 'curtilage'" was at one time held to be essential to a violation of one's Fourth Amendment rights. *Goldman v. United States*, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1941) and *Olmstead v. United States*,

277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1927).

We recognize that the Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) stated that the underpinnings of *Goldman* and *Olmstead* had been so eroded that the "trespass" doctrine could no longer be deemed as controlling. In *Katz* the Supreme Court declared that the Fourth Amendment protects people, not places, and held that police action which intrudes upon and invades an individual's justifiable expectation of privacy constitutes a search within the meaning of the Fourth Amendment.

Defendant's efforts to bring himself within the ambit of *Katz* are in our view unavailing. The record before us clearly shows that the defendant in the instant case did not have any justifiable expectation of privacy in the areaway in the storage building. The record indicates quite clearly the contrary. When the defendant initially rented the locker he was advised by the manager of Poco Storage Company that he could store whatever he desired in his locker, excepting explosives or paint. At that time, however, he was warned, in effect, by the manager that from time to time she allowed the police on the premises and permitted them to use their dogs for the purpose of detecting marijuana, and that should he store marijuana in his locker, he did so at his own risk. In view of such warning, the giving of which was conceded, the defendant is in poor position to assert that he had a justifiable expectation to privacy in the areaway outside his locker.

The use of dogs to sniff out drugs or explosives contained in suitcases, footlockers, and the like has been considered by several Circuits. In *United States v. Fulero*, 162 U.S.App.D.C. 206, 498 F.2d 748 (1974), a marijuana-sniffing dog was allowed to sniff the air around a footlocker in a bus depot. In that case the Circuit Court for the District of Columbia characterized as "frivolous" the suggestion that the dog's sniffing the air around the footlockers was an unconstitutional intrusion into the locker itself.

In *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), the Second Circuit held that the sniffing, nipping and biting, by what was described as a canine cannabis connoisseur, at a suitcase in the baggage area of an airport terminal did not constitute a search or seizure.

In *United States v. Solis*, 536 F.2d 880 (9th Cir. 1976), the Ninth Circuit, in reversing the trial court, held that the use of marijuana-sniffing dogs to sniff the air outside a semi-trailer parked at the rear of a filling station was "reasonable" and hence not a "prohibited search" under the Fourth Amendment.

*State v. Quatsling*, 24 Ariz.App. 105, 536 P.2d 226 (1975) involved a factual situation similar to the instant one. In *Quatsling* the defendant stored explosives in a storage locker which he had rented in the Mini-Storage Lot in Tucson, Arizona. The police allowed a dog trained to detect explosives to "work" the side of the building where the defendant's locker was located, and the dog "reacted" in front of the defendant's locker. The defendant later asserted that the use of the dog constituted an illegal search and therefore could not thereafter be used as the basis for the issuance of a search warrant. This argument was rejected by the Arizona Court of Appeals. That court branded as "without merit" the defendant's claim of invasion of privacy. In so doing the court ruled that the storage facilities were semi-public in nature, and were open for business at the time the police and their dog were there. Additionally, the court approved language to the effect that a private business whose doors are open to the general public is also open to proper entry by the police for any proper purpose not in violation of the owner's constitutional rights. Our reading of *Quatsling* does not disclose whether the police had permission from the owner of the storage company to bring their dog onto the premises. However, in the instant case, it is undisputed that the agents and their dogs were in the Poco Storage Company with the express knowledge and consent of the owner.

The defendant next argues that the affidavit was insufficient to show probable cause that there was marijuana or heroin in defendant's locker in the Poco Storage Company, and that accordingly, the search warrant issued by the state judge was not based on probable cause. In this regard the defendant takes particular aim at the statement in the affidavit that Chane was a "trained, certified marijuana sniffing dog." Such, according to counsel, is a conclusory statement and does not sufficiently set forth the underlying facts so as to allow the issuing judge to exercise his independent judgment on the matter. We do not agree that Chane's educational background and general qualifications had to be described with the degree of specificity argued for by counsel.

In *United States v. Meyer*, 536 F.2d 963 (1st Cir. 1976), a search warrant was attacked on the ground that the affidavit in support of the warrant simply stated that the dog was "trained" to detect drugs and that such was insufficient to establish the "reliability" of the dog. In rejecting this argument, the First Circuit observed as follows:

> Furthermore, the word "trained," when considered in the context of the affidavit, has a common and well understood meaning. Webster's Third New International Dictionary (Unabridged 1965) defines "train" as meaning "to instruct or drill in habits of thought or action" or, alternatively, "to teach (an animal) to obey a command." Assuming, therefore, that the magistrate was a qualified official possessing ordinary and reasonable intelligence and prudence it does not in our view defy logic to conclude that the magistrate understood that the "trained dog" was endowed, by reason of experience and training, with the ability to sniff out cocaine.

We agree with the reasoning of *Meyer*, and the statement in the present affidavit that Chane was trained and certified as a marijuana-sniffing dog is sufficient.

Having determined that, under the circumstances, the act of Chane sniffing the air outside defendant's locker did not constitute a search, and having additionally held that the affidavit is legally sufficient to support the issuance of the warrant to search defendant's locker, it follows that the search of defendant's locker did not violate his Fourth Amendment rights. The "fruits of the poisonous tree" doctrine therefore has no application to the searches the following day of defendant's truck and home, since the original search was "non-poisonous."

Minor complaint is also made to the sufficiency of the affidavit as it relates to the warrant to search defendant's house and truck. It was the marijuana found in one, or perhaps, both, of these searches that formed the basis for Count 3 in the indictment. Counts 1 and 2 related to the search of defendant's storage locker, and the LSD and marijuana seized in the search of the locker. Hence, even assuming that the search of defendant's house and truck were illegal, such would have no effect on his conviction under counts 1 and 2. As previously mentioned, the defendant was sentenced to imprisonment in connection with count 1 only, and, as to counts 2 and 3, sentence was suspended. Such being the case, any possible error as concerns count 3 would not, under the circumstances, vitiate defendant's conviction on count 1, and hence the question of possible error as to count 3 is moot. The present situation is analogous to *United States v. Tager*, 479 F.2d 120 (10th Cir. 1973).

In any event, regardless of probable mootness, the defendant was arrested on January 29, 1976, and the search of his house occurred moments before his arrest, and the search of his truck moments after his arrest, the latter being under circumstances which would indicate that the defendant gave his consent thereto. We believe that the search of defendant's house and truck can be upheld, either on the basis of the warrants, or as a search incident to arrest, or, in the case of the truck, on the basis of consent.

Judgment affirmed.