**UNITED STATES of America, Plaintiff,**

v.

**Adela MORALES, Defendant.**

**Cr. No. 89–66–JC.**

United States District Court,
D. New Mexico.

June 2, 1989.

Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff.

Nancy Hollander, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER came on for consideration of defendant's Motion to Suppress Evidence Obtained By Unlawful Search and Seizure, filed February 28, 1989. The Court held a hearing on March 31, 1989 at which time counsel for both parties presented the testimony of witnesses and made oral argument to the Court. Having taken the motion under advisement at the conclusion of the hearing, the Court is now ready to rule.

The fundamental issue before the Court is whether a law enforcement officer, in the course of a roadblock properly established for the purpose of checking driver's license, registration and proof of insurance, may walk a narcotics-trained dog around the exterior of a vehicle stopped at the roadblock when the canine sniff occurs before the driver's document check has been completed and when the officer has no reasonable, articulable suspicion that a crime is being committed.[1] I find that such action is violative of the Fourth Amendment to the United States' Constitution and that the evidence discovered as the result of the canine sniff must be suppressed.

## I. RELEVANT FACTS

On February 10, 1989, Adela Morales and her seven-year old son were traveling north on Interstate 25 near milemarker 147 when Ms. Morales was stopped at a roadblock conducted by the Socorro Police Department. The principal purpose of the roadblock was to check for driver's license, vehicle registration and proof of insurance. Pursuant to a request from Officer Presilio Vaiza, Ms. Morales produced her driver's license, automobile registration and proof of insurance. While Officer Vaiza was checking her documents, Officer Edward Britt walked a narcotics-trained dog around the exterior of the vehicle. The dog alerted on Ms. Morales' car before Officer Vaiza had finished the document check. The dog used by Officer Britt was trained only to alert on narcotics. It had no other skilled training of any kind. Its only purpose at the roadblock was to ferret out narcotics.

Once the dog alerted, Officer Britt radioed Officer Johnnie Trujillo, the assistant Chief of Police for the Socorro Police Department. Officer Trujillo responded to the radio call by walking down the roadblock to Ms. Morales' car. After conferring with Officers Vaiza and Britt, Officer Trujillo took Ms. Morales' paperwork from Officer Vaiza and asked her to pull her car over to the side of the road. Officer Trujillo explained to Ms. Morales that the officers wanted to see what was inside the trunk of her car, read her her *Miranda* rights and asked her for consent to search. Officer Trujillo then asked Ms. Morales to get out of her car so she could sign a consent-to-search form. Officer Trujillo directed Detective Joel Haley to assist Ms. Morales in signing the form. Detective

---

**1.** This is a question of first impression. The Tenth Circuit has not had to decide whether or not canine sniffs can be performed absent individualized suspicion. See *United States v. Stone*, 866 F.2d 359, 363 n. 2 (10th Cir.1989); *United States v. Williams*, 726 F.2d 661, 663 (10th Cir.), *cert. denied* 467 U.S. 1245, 104 S.Ct. 3523, 82 L.Ed.2d 830 (1984).

Haley filled out those portions of the form having to do with vehicle identification, had Ms. Morales read the form and asked her to sign it if she was willing to give her consent. At this point, Ms. Morales asked Detective Haley what would happen if she refused to sign. He testified that he replied: "Our policy would be to detain the vehicle and obtain a search warrant for the vehicle." Ms. Morales then agreed to sign the consent-to-search form. The search resulted in the seizure of 126 pounds of marijuana which had been hidden in luggage located in the trunk of the vehicle.

It is important to note that two critical facts are undisputed. The first is that prior to the canine sniff, none of the officers at the scene had any suspicion, even an unarticulable or unreasonable one, that Ms. Morales was committing a crime. The second is that when Ms. Morales asked what would happen if she refused to sign the consent-to-search form, she was told that her car would be detained and a search warrant would be procured.

## II. THE ROADBLOCK

 Officers operating a valid roadblock[2] may also investigate possible criminal activity outside the scope of the roadblock provided the officers, while making inquiries within the scope of the purpose for which the roadblock was established, develop a reasonable and articulable suspicion that a crime of another nature is being committed. *United States v. Lopez,* 777 F.2d 543, 547 (10th Cir.1985). Stated another way, if, in the process of checking driver's license, registration and proof of insurance, the *officers see evidence of other crimes,* they have the right to take *reasonable investigative steps* and are not required to close their eyes to suspicious circumstances. *United States v. Prichard,* 645 F.2d 854, 857 (10th Cir.) (citations omitted) (emphasis added), *cert. denied,* 454

U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110, *reh'g. denied,* 454 U.S. 1069, 102 S.Ct. 620, 70 L.Ed.2d 605 (1981). It is undisputable that a canine sniff would be a reasonable investigative step if the officers had some suspicion, some evidence, that another crime was being committed. But grave constitutional questions arise when the canine sniff is routinely performed with no individualized suspicion of wrongdoing at a roadblock established to check driver's license, registration and proof of insurance.

## III. CANINE SNIFFS AND THE FOURTH AMENDMENT

The government argues (1) that a canine sniff is not a search and hence is excluded from judicial control of any kind and (2) even if a canine sniff does implicate the Fourth Amendment, the sniff in this case was legal because Ms. Morales had no reasonable expectation of privacy in the airspace surrounding her car. The Court will address each of these arguments separately.

### A. Applicability of the Fourth Amendment to Canine Sniffs

 The government argues that under *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court held that a canine sniff is not a search and hence not subject to limitation under the Fourth Amendment. If the canine sniff is not a search under the Fourth Amendment, the government reasons that it is entitled to a virtual *carte blanche* in its use.

Such a broad reading of the *Place* holding would lead to the conclusion that canine sniffs conducted any place an officer has a lawful right to be, be they sniffs of property or of persons, are not subject to the Fourth Amendment. This argument is not supported by *Place* or the Tenth Circuit's understanding of *Place*[3]. It is one that

---

**2.** The defendant has not contested the validity of the roadblock except insofar as she alleged it was pretextual. I need not reach this issue since I find that the canine sniff violated the Fourth Amendment even if the roadblock was *not* a pretextual stop.

**3.** The Tenth Circuit has characterized the holding in *Place* as follows:

> Upon reasonable suspicion, police may temporarily detain luggage at an airport. *Under such circumstances,* police use of a narcotics dog to sniff the luggage is not a search. *United ed States v. Place,* 462 U.S. 696, 706–707 [103

this Court and others will not countenance. See, e.g. *United States v. Thomas,* 757 F.2d 1359 (2nd Cir.), *cert. denied sub nom. Fisher v. United States* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985) (canine sniff conducted at the door of a person's dwelling was *search requiring warrant based on probable cause*); *Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470 (5th Cir.1982), *cert. denied* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (canine sniff of high school student violative of Fourth Amendment when sniff performed without individualized suspicion of criminal activity).

What the Supreme Court did hold in *Place* was that exposure of an individual's luggage to a trained canine when the luggage was located in a public place and when the authorities had specific and articulable facts warranting a reasonable belief that the individual's luggage contained narcotics was not a search within the meaning of the Fourth Amendment. *Place,* 462 U.S. at 703, 707, 103 S.Ct. at 2642, 2644. The language which is generally accepted as the holding in *Place* is:

> ... we conclude that the *particular course of investigation that the agents intended to pursue here*—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

462 U.S. at 707, 103 S.Ct. at 2645 (emphasis added).[4] Neither *Place* nor any other court of which this Court is aware has held that a canine sniff is never subject to the Fourth Amendment. Rather, a court must determine on the facts of the case before it whether or not a canine sniff intruded on an individual's reasonable expectation of privacy. See *Katz v. United States,* 389

U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

### B. Application of the Fourth Amendment to a Canine Sniff Performed at a Roadblock When Officers Have No Individualized Suspicion of Criminal Activity

It is an undisputed fact that, prior to the canine sniff, the officers at the roadblock had no individualized suspicion that Ms. Morales was committing a crime. The government argues that Ms. Morales had no reasonable expectation of privacy in the airspace surrounding her car, hence the canine sniff was not a search under the Fourth Amendment. The Court disagrees.

In arguing that Ms. Morales had no reasonable expectation of privacy, the government contends that the holding in *Place* is controlling, suggesting that the relevant facts in this case are on all fours with those in *Place.* This is not the case as " '... an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights.' " *United States v. Rengifo–Castro,* 620 F.2d 230, 232 (10th Cir.1980) quoting *Arkansas v. Sanders,* 442 U.S. 753, 757, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979). Given that small differences can be determinative in the Fourth Amendment context, differences of a more significant nature are even more critical. The Court today is faced with facts which differ significantly from those in *Place* and which significantly affect the relationship between law enforcement officers and the public at large.

The Supreme Court recognizes that "the intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and its extent." *Place,* 462 U.S. at 705, 103 S.Ct.

---

S.Ct. 2637, 2644, 77 L.Ed.2d 110].... (1983); *United States v. Williams,* 726 F.2d 661, 663 (10th Cir.1984).

*United States v. Stone,* 866 F.2d 359, 363 (10th Cir.1989) (emphasis added). The Court went on to hold

> Likewise, we think police may employ a narcotics dog to sniff an automobile which they have *stopped upon reasonable suspicion to believe it contains narcotics. Under these cir-*

*cumstances,* police use of a narcotics dog is not a search requiring a search warrant or probable cause.

*Id.* (emphasis added).

**4.** For an unsuccessful attempt to characterize this language as dicta, see *United States v. Beale,* 731 F.2d 590 (9th Cir.1983), *reh'g. en banc* 736 F.2d 1289 (9th Cir.), *cert. denied* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

at 2643. In *Place,* the personal effects were luggage carried by the defendants in an airport. Once law enforcement officers had developed a reasonable, articulable suspicion that the defendants' luggage contained narcotics, the Supreme Court held that a brief detention of the luggage for the purpose of subjecting it to a canine sniff was not violative of the Fourth Amendment. The canine sniff was strictly of the luggage. The dog had no opportunity to approach or sniff the defendants or any personal items that were not suspected of containing contraband.

The *Place* analysis was wholly premised on the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[5] Stated another way, the point of departure in the *Place* analysis was whether or not the luggage could be detained without probable cause and then subjected to a canine sniff. The Supreme Court carved out an exception to the rule that the seizure of personal property was presumed to be *per se* unreasonable under the Fourth Amendment unless it was pursuant to a warrant which was issued upon probable cause and which described with particularity the items to be seized. Since the officers could briefly seize the luggage based on a reasonable, articulable suspicion that it contained narcotics, the Court reasoned that a canine sniff of the luggage did not violate the defendants' privacy interest and, in the context of the facts of that case, was not a search. As in *Place,* the seizure of the item here in question, an automobile, was lawful. But that similarity is subsumed by a critical difference. The seizure of the luggage in *Place* was lawful because it was based on a reasonable, articulable suspicion that a drug-related crime was being committed. The seizure of the automobile in the case at bar was lawful for reasons wholly unrelated to suspected drug-related activity. Thus, the Court

must analyze, within the context of the facts before it, whether or not the canine sniff was a search.

None of the officers at the Socorro roadblock had a reasonable, articulable suspicion of any criminal activity before the canine sniff was performed. The dog sniffed the exterior of Ms. Morales' vehicle, although nothing in the record indicates that the dog would alert only on aromas emitted from the vehicle. In other words, the dog would have alerted on contraband whether it was transported on Ms. Morales' or a passenger's person, in her luggage in the trunk or passenger compartment of the car, or in a secret compartment somewhere in the car. Unlike the plaintiff in *Place,* which asked only that the Supreme Court carve out a narrow exception to the *probable cause* requirement of the Fourth Amendment, the government is asking this Court to exempt from even minimal Fourth Amendment scrutiny all canine sniffs of vehicles which are detained lawfully, but for reasons wholly unrelated to suspected narcotics trafficking. To so hold would give officers the right to subject vehicular traffic stopped at red lights to canine sniffs so long as the sniff was completed before the light changed. Police practices of this nature raise the grim spectre of the totalitarian state.

■ The government first argues that the canine sniff is not a search because it is merely an enhancement of the officer's senses. It is undisputed that an officer's "sniff" of marijuana when he is properly checking documents at a roadblock is not a search under the Fourth Amendment and would establish probable cause for arrest of the occupants and search of the vehicle, *United States v. Merryman,* 630 F.2d 780 (10th Cir.1980). This being a given, it is argued that the canine sniff, as a mere enhancement of the officer's senses, should

---

**5.** "In this case, the Government asks us to recognize the reasonableness under the Fourth Amendment of warrantless seizures of personal luggage from the custody of the owner on the basis of less than probable cause for the purpose of pursuing a limited course of investigation, short of opening the luggage, that would quickly confirm or dispel the authorities suspi-cion. *Specifically, we are asked to apply the principles of Terry v. Ohio ... to permit such seizures on the basis of reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime." Place,* 462 at 702, 103 S.Ct. at 2642 (emphasis added).

be treated just as the officer's own "sniff" of marijuana would be treated. The Court finds otherwise.

The Supreme Court has classified a canine sniff as *sui generis. Place,* 462 U.S. at 707, 103 S.Ct. at 2644. *"Sui generis"* is Latin for "of its own kind or class; i.e., the *only one* of its kind, peculiar." Black's Law Dictionary 1602 (Rev. 4th Ed.1968) (emphasis in original). In so classifying the canine sniff, the Supreme Court has implicitly rejected the argument that a canine sniff is a mere enhancement of an officer's senses. A canine sniff is unique and in a class by itself as a dog's sensory capabilities are far superior to those of a human being. With the use of a narcotics-trained canine, law enforcement officers may obtain information from inside private enclosed spaces which they could not derive from the use of their own senses. *Thomas,* 757 F.2d at 1367. The dog does not enhance the officer's sense of smell, it replaces it. The dog alerts the officer to information he would have been totally unable to detect with his own senses. *United States v. Beale,* 674 F.2d 1327, 1333 (9th Cir.1982), *vacated and remanded* 463 U.S. 1202, 103 S.Ct. 3529, 77 L.Ed.2d 1382, *on remand* 731 F.2d 590 (9th Cir.1983), *reh'g. en banc* 736 F.2d 1289 (9th Cir.), *cert. denied* 469 U.S. 1072 (1984).

Having found that a canine sniff is *sui generis* and not a mere enhancement of an officer's senses,[6] the Court must now determine whether Ms. Morales had a legit-imate expectation of privacy in the airspace surrounding her automobile. Whether an expectation of privacy is reasonable

> 'depends on all the circumstances surrounding the search ... and the nature of the search ... itself.' ... Thus, the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'

*Skinner v. Railway Labor Executives' Assoc.,* —— U.S. ——, ——, ——, 109 S.Ct. 1402, ——, 103 L.Ed.2d 639 (1989) (citations omitted). The Fourth Amendment does not apply unless an individual's expectation of privacy is one that society is willing to accept as reasonable. *Florida v. Riley,* —— U.S. ——, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (Justice O'Connor concurring). See also, *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

As noted previously, the trained canine who is commanded to sniff the exterior of a vehicle alerts upon narcotics without respect for where those narcotics are located. Confirmation of the dog's alert occurs only after a search of the vehicle or, if necessary, the occupants. Thus, a proper analysis of the expectation of privacy on the facts before the Court will include not only a discussion of the privacy expectation surrounding an automobile, but also those surrounding the occupants of the vehicle and the containers within the vehicle.[7]

---

**6.** The Court also disagrees with the argument offered by defendant that the canine sniff is akin to magnometers, x-ray machines and other electrical and mechanical surveillance devices which invoke the full protection of the Fourth Amendment. As the Supreme Court has stated, the canine sniff is sui generis. Unlike mechanical and electrical surveillance devices, which are dragnet detection measures, the canine sniff is very discreet. With a well-trained canine, there is a minimal risk that an innocent person's privacy will be intruded upon since the nose of a narcotics-trained canine only ferrets out narcotics.

**7.** It should be remembered that after the dog alerted but before the automobile had been searched, Ms. Morales was arrested by Officer Trujillo. This is evidenced by Officer Trujillo's testimony that once the dog alerted, he asked Ms. Morales to pull over to the side of the road, whereupon she was read her *Miranda* rights.

A more direct example of the canine sniff's potential infringement on bodily integrity is evidenced by the case of a person riding a motorcycle on the roadway. The cyclist, too, is subject to the check for driver's license, registration, and proof of insurance. A canine sniff around the exterior of his vehicle, a motorcycle, is surely a canine sniff of his person as well. To find that only the airspace around a vehicle which fully encloses its occupants is subject to the canine sniff would mandate the cyclist's being waved through the roadblock without being subjected to the canine sniff or his removal from his motorcycle so the vehicle could be sniffed. The former resolution would create untenable distinctions between those who travel by motorcycle and those who travel by automobile. The latter would result in detention of

There is no question that society recognizes the privacy interest in the integrity of one's person. The Fourth Amendment applies with fullest vigor against any intrusion on the human body. *Horton*, 690 F.2d at 478.

Society also recognizes as reasonable the privacy interest in luggage placed in automobiles. In the context of warrantless searches of containers located in automobiles where probable cause existed only for the search of the container, the Supreme Court has recognized that an individual's privacy interest in the container is distinct from the privacy interest in the automobile. The Court reasoned:

> [o]ne is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile.... Indeed, the very purpose of the suitcase is to serve as a repository for personal items when one wishes to transport them.

*Arkansas v. Sanders*, 442 U.S. 753, 764, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235 (1979) (footnote omitted).[8] Because luggage is a repository for personal effects, there is a greater expectation of privacy in it than in an automobile. *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

The automobile, too, is an "effect" within the meaning of the Fourth Amendment and is subject to the constitutional standard of reasonableness. *Chadwick*, supra, at 12, 97 S.Ct. at 2484. One does not surrender all protection of the Fourth Amendment by entering an automobile, *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), though that interest is diminished because of its transportation function.

*Chadwick*, supra, 433 U.S. at 12, 97 S.Ct. at 2484.

Since society recognizes a privacy interest in the integrity of one's person, in luggage one places in an automobile and in an automobile itself, the Court must now determine to what degree society is willing to recognize these privacy interests when they are subjected to a canine sniff which furthers legitimate governmental interests.

The use of narcotics-trained dogs serves the legitimate governmental interest in combatting drug trafficking. A canine sniff is one of the least intrusive investigative means for determining the presence of narcotics. It requires only minimal personal exposure, does not require the opening of containers, *Place*, supra, 462 U.S. at 707, 103 S.Ct. at 2644, and does not expose noncontraband items that would otherwise remain hidden from public view, *id.* Its nonintrusiveness notwithstanding, the canine sniff, in the context of the facts of this case, is a search. As such, a balance must be struck between the government's interest in using narcotics-trained dogs to combat illegal trafficking in narcotics and an individual's privacy interests in bodily integrity, luggage and automobiles.

In asking the Court to find that the canine sniff in question is justified with no individualized suspicion of criminal activity, the government is not asking the Court to balance the interests of the individual against those of the government. Rather, it is asking this Court to find that Ms. Morales had no recognizable privacy interests when the exterior of her automobile was subjected to a canine sniff. This conclusion is inappropriate because, as stated

---

both the motorcycle and its driver for reasons unrelated to the principal purpose of the roadblock. Neither of these "solutions" would pass constitutional muster.

**8.** In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court did not overrule *Sanders* but rejected the reasoning that

> 'a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else.'

*Ross*, 456 U.S. at 815, 102 S.Ct. at 2168 (citations omitted). On the issue before this Court, the

distinction made in *Ross* does not affect the controlling language in *Sanders* which holds that individuals have a privacy interest in luggage which is distinct from that in automobiles. Unlike the issue in *Ross*, which was whether or not officers had to obtain a search warrant before opening containers located in a car when they had probable cause to believe the car contained narcotics, the issue before this Court is whether or not a canine sniff can be performed without even a reasonable suspicion that the car or its contents contain narcotics.

above, legitimate privacy interests are at stake. Nor is such a conclusion mandated by *Place*, which concerned only luggage which officers had a reasonable, articulable suspicion to believe contained narcotics, or by any of the other cases cited by the government, which are distinguishable on their facts.[9]

■ Key to a proper balancing of interests is the recognition that a canine sniff is discreet, minimally-intrusive and has the potential to greatly enhance the government's ability to detect illegal narcotics. Given these factors, an officer need not have probable cause that a vehicle lawfully detained at a roadblock contains narcotics before subjecting it to a canine sniff. Cf. *United States v. Stone*, 866 F.2d 359 (10th Cir.1989) (canine sniff of automobile is not a search requiring search warrant or probable cause when vehicle stopped upon reasonable suspicion to believe it contains narcotics). However, the Fourth Amendment would be meaningless if, having recognized the various privacy interests of Ms. Morales, the Court were to hold that not even an individualized suspicion of criminal activity was required. Consistent with *Place*, which analyzed canine sniffs in the context of *Terry v. Ohio* and recognized that

**9.** The government relies heavily on *United States v. Lovell*, 849 F.2d 910 (5th Cir.1988) and *United States v. Goldstein*, 635 F.2d 356 (5th Cir.), *cert. denied* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981). In *Lovell*, luggage that had been checked with a common carrier at an airport was taken off the carrier's conveyor belt and subjected to a sniff by Drug Enforcement Administration (DEA) agents. In the context of luggage checked at an airport, the Fifth Circuit determined that the agents' conduct did not offend reasonable expectations of privacy. Accordingly, that Court held that the human sniff, which included a slight squeeze of the luggage, was reasonable even when it was not supported by individualized suspicion. In *Goldstein*, the same circuit upheld a canine sniff of luggage checked into the custody of a commercial airline carrier when the sniff was not based on individualized suspicion.

The privacy interest in luggage checked into the custody of a third-party common carrier is significantly less than the privacy interest in luggage placed in the trunk of a private automobile. This fact alone sufficiently distinguishes these cases. *Goldstein* is also distinguishable on the grounds that the canine sniff was solely of the checked luggage. Unlike the situation before this Court, the narcotics-trained canine in *Goldstein* had no opportunity to detect aromas emitted from anything other than the checked luggage. It is noteworthy that the Fifth Circuit, too, does a balancing test based on the facts of the case before it to determine whether or not a canine sniff is a search. Cf. *Horton v. Goose Creek Indep. School Dist.*, 690 F.2d 470 (5th Cir.1982), *cert. denied* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (balancing of interests leads court to conclude that canine sniff of high school student violative of the Fourth Amendment when performed without reasonable suspicion).

The government also cites *United States v. Bronstein*, 521 F.2d 459 (2nd Cir.1975), *cert. denied* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), for the proposition that a canine sniff is analogous to an officer's sniff. This opinion was published well-before the Supreme Court's classification of a canine sniff as sui generis. For the reasons stated in the text of this opinion, a canine sniff is not the equivalent or mere enhancement of an officer's sniff. Moreover, in *Bronstein*, the canine sniff was performed on luggage checked with a third-party carrier only after individualized suspicion had been developed that the defendants' luggage contained contraband.

The Tenth Circuit cases cited by the government are also distinguishable. In *United States v. Burns*, 624 F.2d 95 (10th Cir.), *cert. denied sub nom. Reynolds v. United States* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), a narcotics-trained dog was walked around the interior of a motel room pursuant to DEA agents' arrest of the room's occupants and the agents' valid search warrant for the interior of the motel room. The dog alerted on a briefcase and a suitcase which were later found to contain narcotics. The defendants challenged the canine sniff on the grounds that it was done without a warrant. The Court held that the use of a narcotics-trained dog to conduct a limited, warrantless search of luggage in the motel room incident to the lawful arrest of its occupants was permissible. Under these circumstances, the canine sniff did not "offend constitutional guarantees." The distinctions between the facts in *Burns* and the case at bar are obvious. To the extent that the *Burns* court inferred that a canine sniff is analogous to a human sniff, the finding in *Place* that a canine sniff is sui generis renders such an inference obsolete. In *United States v. Venema*, 563 F.2d 1003 (10th Cir.1977), the Court held that a canine sniff outside a public storage locker did not offend the defendant-lessee's justifiable expectation of privacy since the manager of the storage facility had warned defendant that "from time to time she allowed the police on the premises and permitted them to use their dogs for the purpose of detecting marijuana, and that should he store marijuana in his locker, he did so at his own risk." *Venema*, 563 at 1006. Again, the factual distinctions between this case and the case at bar are obvious.

Fourth Amendment intrusions on possessory and privacy interests can vary in nature and extent. I hold that before an officer may subject a vehicle which is lawfully detained at a roadblock established to check driver's license, registration and proof of insurance to a canine sniff, he must first have at least a reasonable, articulable suspicion that a crime is being committed.

## IV. CONSENT

 The government conceded at oral argument that if the canine sniff was held to be violative of the Fourth Amendment, the consent by Ms. Morales was not freely and voluntarily given. This follows from the undisputed fact that in response to Ms. Morales' inquiry into the consequences of her not signing the consent-to-search form, Detective Haley told her that her vehicle would be detained and that a search warrant would be obtained. In other words, Ms. Morales was told that the vehicle would be searched with or without her consent. Consent given only in acquiescence to a claim of lawful authority is not free and voluntary. *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). The consent given by Ms. Morales is also invalid as the poisonous fruit of an illegal detention. *United States v. Recalde*, 761 F.2d 1448, 1458 (10th Cir.1985).

## V. CONCLUSION

The holding in this case will not prevent law enforcement officials from engaging in zealous police work. The reasonable suspicion standard is one with which law enforcement officials are intimately familiar and which is not unduly burdensome. Without at least minimal restraints on an officer's abilities to conduct canine sniffs of occupied vehicles when he has no individualized suspicion of criminal activity, the protections of the Fourth Amendment are only illusory.

In the context of a warrantless search and seizure, the Tenth Circuit stated:

'The point of the Fourth Amendment, which is often not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' *Mincey v. Arizona*, 437 U.S. 385, 395 [98 S.Ct. 2408, 2415, 57 L.Ed.2d 290] ... (1978) (quoting *Johnson v. United States*, 333 U.S. 10, 13–14 [68 S.Ct. 367, 368–69, 92 L.Ed. 436] (1948)).

*United States v. Bonitz*, 826 F.2d 954, 958 (10th Cir.1987). In the case of a canine sniff of a vehicle lawfully detained at a roadblock for a driver's license, registration and insurance check, this Court is only requiring the most minimal of Fourth Amendment protections. The Court is in no way denying law enforcement officers the support of inferences reasonable men draw from evidence. To the contrary, it is merely requiring the existence of a reasonable suspicion, which is but an inference drawn by the officer in the field, before an individual's privacy rights are infringed upon by a canine sniff. On the facts of this case, requiring a reasonable, articulable suspicion of criminal activity strikes the appropriate balance between law enforcement's investigation of drug-related crimes with narcotics-trained dogs and the personal freedoms that are the bedrock of our democratic society. "[T]here is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *United States v. Guzman*, 864 F.2d 1512, 1518 (1988) (quoting *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)).

An order in accordance with this memorandum opinion will be entered forthwith.