904 F.2d 37
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgil COOK, Defendant-Appellant.
 No. 89-5947.
 United States Court of Appeals, Sixth Circuit.
 May 29, 1990.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and AVERN COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Virgil Cook appeals his conviction for possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). On February 10, 1989, Cook was indicted in the Western District of Tennessee for possessing about 483.2 grams of cocaine. On March 28, 1989, Cook filed an amended motion to suppress evidence, which the district court denied. On April 25, 1989, the jury returned a guilty verdict on the one-count indictment. The court sentenced Cook to 57 months' imprisonment. Cook does not allege on appeal that the district court made any errors at trial or during the sentencing hearing; he attacks only the court's denial of his motion to suppress. Because we hold that the district court correctly refused to suppress the evidence of cocaine, we affirm the conviction.
 
 
 2
 * On December 30, 1988, officers in the Memphis Police Department's Organized Crime Unit conducted a training exercise for narcotics-sniffing dogs at a storage locker facility in Memphis known as Winchester Mini-Storage. One of the dogs, Moose, began sniffing around Bin 551. Bin 551 was not one of the bins where the officers had planted drugs for the dogs to find. The police obtained the name of the lessee of Bin 551 from the manager of Winchester Mini-Storage. They checked police records and discovered that the lessee, appellant Cook, had prior convictions for drug-related offenses.
 
 
 3
 Sergeant Pat Exley, who was Moose's handler, obtained a search warrant based on this information. A search of Bin 551 revealed a black tote bag containing 17 packets of cocaine. The Memphis police turned over the evidence to the Drug Enforcement Agency; on January 9, 1989, Cook surrendered to the United States Marshal's Office.
 
 
 4
 The affidavit supporting the search warrant stated:
 
 
 5
 On December 30, 1988, while running a training exercise for the narcotic dogs at Winchester Mini Storage, located at 4500 Winchester, narcotic dog Moose and narcotic dog Bandit both made strong indications of drugs at storage bin # 551. The bin was found to belong to a male Black, Virgil Cook who is known to traffic in narcotics. This occurred in Memphis, Shelby County, Tennessee.
 
 
 6
 Cook claims that the affidavit did not state probable cause for a search of the bin. Cook also claims that the "strong indications" made by Moose and Bandit, without which there would have been no evidence against Cook, constituted warrantless searches and that the police illegally obtained the identity of the lessee of Bin 551.
 
 II
 
 7
 * Cook first argues that the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Brown v. Illinois, 422 U.S. 590, 611 (1975) (Powell, J., concurring). His argument essentially is that the affidavit lacks probable cause because it fails to state that Moose and Bandit were trained adequately to be reliable sniffers. Cook contends that we should be reluctant to find probable cause where there is no showing of special training or experience in smelling drugs. He suggests that only dogs with "superior" or, at least, "above average" noses are qualified to sniff out narcotics.
 
 
 8
 There were no facts presented to the magistrate who issued the search warrant to indicate that Moose and Bandit had "superior" or highly reliable noses. Cook suggests that Moose and Bandit were juvenile dogs on a training exercise.
 
 
 9
 We dismiss Cook's contention. It is not required that the affidavit explain the dog's training history. A dog sniff indicating the presence of controlled substances is per se probable cause for a search warrant. See United States v. Knox, 839 F.2d 285, 291 (6th Cir.1988), cert. denied, 109 S.Ct. 1742 (1989); United States v. Quinn, 815 F.2d 153, 159 (1st Cir.1987). The investigating officers do not have to describe in their affidavit the particulars of the dog's training. See United States v. Venema, 563 F.2d 1003, 1007 (10th Cir.1977) (holding that statement in affidavit that the dog was trained and certified as a marijuana-sniffing dog was sufficient). The references in the affidavit to the dogs as "narcotic dog Moose and narcotic dog Bandit" were a sufficient vouching and reasonably implied "trained narcotic dog Moose and trained narcotic dog Bandit." The affidavit, therefore, did state probable cause on its face. If this reasonable implication is, in fact, untrue, then it would be subject to attack under Franks v. Delaware, 438 U.S. 154 (1978).
 
 B
 
 10
 Cook's second argument is that the dog sniff was a search without a warrant, was in violation of the fourth amendment, and poisoned the subsequent search warrant. Cook attempts to distinguish his case from those in which courts have held that a dog sniff is not a "search" within the meaning of the fourth amendment. See United States v. Place, 462 U.S. 696, 707 (1983).
 
 
 11
 Cook argues that while a dog sniff at an airport may not be a search, see Place, a dog sniff in a private storage building whose lessees had a reasonable expectation of privacy is a search. See United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir.) (holding that a dog sniff at the front door of a person's private home constitutes a "search"), cert. denied, 474 U.S. 819 (1985). Fundamental to this argument is his claim that he actually had a reasonable expectation of privacy in a commercial facility containing his rented storage bin.
 
 
 12
 We hold that a person's expectation of privacy does not extend to the areaway outside a rented storage locker in a public facility. Winchester Mini-Storage was located in a commercial building and was open to the public for business. United States v. Place established that police may use trained dogs to sniff out drugs in public places without implicating the fourth amendment.
 
 
 13
 The Tenth Circuit has rejected a privacy claim similar to Cook's. In United States v. Venema, the court held that a dog sniff of the defendant's storage locker at a rental facility did not violate the fourth amendment since the defendant had no reasonable expectation of privacy. In facts nearly identical to those before us, the court reasoned:
 
 
 14
 The defendant rented locker number 32 from the Poco Storage Company and nothing more. He did not rent the areaway in front of his locker. Such areaway was at least semi-public in nature. The agents brought [the dog] onto the premises with the consent of the owner of the storage company. [The dog] was in the areaway outside of defendant's locker and detected odors emanating from the locker proper. It is certain that there was no physical trespass of the locker itself.
 
 
 15
 563 F.2d at 1005.
 
 
 16
 We are persuaded by Venema and Place that the dog sniff was not a warrantless search subject to the fourth amendment. It is not disputed that Sergeant Exley was lawfully on the premises for the purpose of conducting a training exercise. Since the dogs were sniffing random lockers planted with narcotics, there was a reasonable explanation for why the dogs were sniffing the air outside all of the lockers, including Cook's. Cook had no reasonable expectation of privacy in the areaway outside Bin 551. United States v. Thomas does not compel the opposite conclusion. The court in Thomas found that the defendant had a reasonable expectation of privacy around the front door of his home because that area was part of his curtilage; Thomas does not apply here because a public rental facility is not part of Cook's curtilage.
 
 C
 
 17
 The information which the storage facility manager gave the police about the identity of the person leasing Bin 551 was obtained without a warrant. Cook argues that this constituted a seizure (of information) without a warrant, in violation of the fourth amendment. For this proposition, Cook cites United States v. Korman, 614 F.2d 541 (6th Cir.), cert. denied, 446 U.S. 952 (1980). His argument is not well taken.
 
 
 18
 In Korman, DEA agents obtained incriminating information after a warrantless entry into a house. The court held that the agents had probable cause even without the allegedly illegally obtained information and declined to rule upon the legality of the information. Korman, therefore, does not concern an illegal seizure of information and is inapposite.
 
 
 19
 Whether Cook's rights were violated depends upon whether he had a reasonable expectation of privacy in his identity as lessee of Bin 551. The common law rule is that individuals have no reasonable expectation of privacy in information voluntarily exposed to the public. See Katz v. United States, 389 U.S. 347, 351 (1967); United States v. Sahley, 526 F.2d 913, 916-17 (5th Cir.1976). Cook knowingly and voluntarily provided his name and address to the storage company, and he cannot now complain that he had an expectation of privacy in that information.
 
 
 20
 For the foregoing reasons, we affirm Cook's conviction.
 
 
 21
 RALPH B. GUY, Jr., Circuit Judge, concurring.
 
 
 22
 Although I agree that Cook's conviction must stand, I write separately to express a somewhat different view on the issues presented by the canine sniff and the affidavit supporting the search warrant.
 
 
 23
 I. A Canine Sniff is not a Search Within the Meaning of the Fourth Amendment
 
 
 24
 The court's conclusion that the canine sniff of Cook's locker did not constitute a search within the meaning of the Fourth Amendment is sound; however, I believe that this result may be obtained without reliance on the questionable generalization that "a person's expectation of privacy does not extend to a rented storage locker in a public facility."[1] In fact, the Supreme Court's analysis in this area turns on the determination that a person has no legitimate privacy interest in the possession of contraband items; the location of such items is, in the end, entirely irrelevant to the calculation.
 
 
 25
 In United States v. Place, 462 U.S. 696 (1983), the Court determined that exposure of luggage located in a public place to a "trained canine--did not constitute a 'search' within the meaning of the Fourth Amendment." Id. at 707. The Court reasoned that, although a person "possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment," a canine sniff is "so limited both in the manner in which the information is obtained and in the content of the information revealed," that no Fourth Amendment protection is merited. Id. The Court noted the sui generis nature of a canine sniff stressing that "the manner in which information is obtained through this investigative technique is much less intrusive than a typical search," and that "the sniff discloses only the presence or absence of narcotics, a contraband item." Id.[2]
 
 
 26
 The constitutionality of an investigative technique capable only of determining the presence or absence of contraband was again addressed in United States v. Jacobsen, 466 U.S. 109 (1984). In Jacobsen, the Court proceeded from the premise that an investigatory technique will only be considered a "search," and hence subject to the requirements of the Fourth Amendment, when it "infringe[s] an expectation of privacy that society is prepared to consider reasonable." Id. at 122; see also id. at 113. The Court then determined that a chemical "field test" that "merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy," id. at 123, because
 
 
 27
 Congress has decided--and there is no question about its power to do so--to treat the interest in "privately" possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably "private" fact, compromises no legitimate privacy interest.
 
 
 28
 Id. (footnote omitted). The Court in Jacobsen held that its conclusion was "dictated by United States v. Place," explaining that "the reason [the Place canine sniff] did not intrude upon any legitimate privacy interest was that the governmental conduct could reveal nothing about noncontraband items." Jacobsen, 466 U.S. 124 n. 24 (emphasis in original).
 
 
 29
 It would seem apparent that Place and Jacobsen stand for the proposition that a canine sniff capable of detecting only the presence or absence of a contraband item is not a search within the meaning of the Fourth Amendment. This reading, however, seems to have been rejected by at least one circuit. The plaintiff relies on United States v. Thomas, 757 F.2d 1359 (2d Cir.), cert. denied, 474 U.S. 819 (1985), a case decided by the Second Circuit after the Court's decisions in Place and Jacobsen. The Thomas court held that a canine sniff conducted outside a defendant's apartment and revealing the presence of drugs inside constituted a search within the meaning of the Fourth Amendment. The Second Circuit distinguished Place on its facts, reasoning that "[w]hile one generally has an expectation of privacy in the contents of personal luggage, this expectation is much diminished when the luggage is in the custody of an air carrier at a public airport." 757 F.2d at 1366. The Thomas court stressed the contrasting "heightened privacy interest that an individual has in his dwelling place," id., and found that, "[b]ecause of defendant Whelling's heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search." Id. at 1367.
 
 
 30
 The District of Columbia Circuit has rejected the reasoning of Thomas in an opinion holding that a canine sniff of a train sleeping compartment conducted from a public corridor did not constitute a search. United States v. Colyer, 878 F.2d 469, 477 (D.C.Cir.1989). The Colyer court explained that Place and Jacobsen stand for the simple proposition that "governmental conduct that can 'reveal nothing about noncontraband items,' Jacobsen, 466 U.S. at 124 n. 24, interferes with no legitimate privacy expectation." 878 F.2d at 474. I agree that Place and Jacobsen compel the conclusion that a canine sniff of an inanimate object is not a search under the Fourth Amendment, regardless of the object or area sniffed.[3] No more need be said with respect to the dog sniff of Cook's locker.
 
 
 31
 II. The Search Warrant Was Not Supported by Probable Cause
 
 
 32
 I would part company with the court again in my analysis of the sufficiency of the affidavit used to obtain the search warrant. In my opinion, an affidavit supported only by a canine alert, where the dog is of unspecified reliability, and the alert takes place during a "training exercise" does not present a magistrate with sufficient information to allow him to make a fully independent determination of probable cause. See Illinois v. Gates, 462 U.S. 213, 239 (1983).
 
 
 33
 In the only case speaking directly to the issue, the Ninth Circuit wrote that "the mere fact that a dog has 'hit' on a piece of baggage or cargo does not, in the absence of any factors supporting its reliability, establish probable cause." United States v. Fernandez, 772 F.2d 495, 498 n. 2 (9th Cir.1985) (citing United States v. Spetz, 721 F.2d 1457 (9th Cir.1983) ("A validly conducted dog sniff can supply the probable cause necessary for issuing a search warrant only if sufficient reliability is established by the application for the warrant.") In fact, the Ninth Circuit has indicated that a district court finding of probable cause based on evidence of a dog "hit" without evidence supporting the dog's credibility would be "clearly erroneous." Fernandez, 772 F.2d at 498 n. 2.
 
 
 34
 The government has failed to produce a single case in which a canine sniff has been held to establish probable cause in the absence of any indication of the reliability of the particular dog. In United States v. Venema, 563 F.2d 1003 (10th Cir.1977), cited by the government as authority for the proposition that no facts regarding the reliability of the dog are required, the Tenth Circuit found probable cause in the "affidavit that Chane was trained and certified as a marijuana-sniffing dog." Id. at 1007. Of course, the affidavit in the case at bar fails to specify that "Moose" and "Bandit" were trained and certified; the fact that the dogs alerted "while running a training exercise" raises the distinct possibility that precisely the opposite was true. The government also cites United States v. Meyer, 536 F.2d 963 (1st Cir.1976); however, in that case the magistrate relied on an affidavit specifying that a Drug Enforcement Agency "trained dog" had alerted. 536 F.2d at 966. Other cases in which courts have held that an affidavit specifying a dog alert established probable cause have invariably involved fully-trained narcotics-sniffing dogs. See United States v. Massac, 867 F.2d 174, 176 (3rd Cir.1989) (In finding probable cause to arrest based on a dog alert, the court supported its conclusion with "the finding of the district court that this particular dog met the training and reliability requirements." (footnote omitted)); United States v. Waltzer, 682 F.2d 370, 372 (2d Cir.1982), cert. denied, 463 U.S. 1210 (1983) ("dog's designation of the luggage" established probable cause to arrest where "[t]he testimony indicated that the dog Kane had a record of 100 percent accuracy.")
 
 
 35
 The only evidence contained in the affidavit apart from the dog alert is that the bin "was found to belong to a male black, Virgil Cook, who is known to traffic in narcotics." The gratuitous reference to defendant's race is, of course, irrelevant to a probable cause determination, and the statement that defendant "is known to traffic in narcotics" is the type of "wholly conclusory statement," Illinois v. Gates, 462 U.S. at 239, that gives the magistrate no basis for making an independent determination of probable cause. See Nathanson v. United States, 290 U.S. 41 (1933). Under the circumstances of this case, where a narcotics-dog alert was the sole evidence to support probable cause, where the reliability of the dogs was called into question on the face of the affidavit, and where the affidavit contained absolutely no indication of the accuracy of the dogs that alerted, I would find that the "totality of the circumstances," Illinois v. Gates, 462 U.S. at 241, did not provide the magistrate with the requisite probable cause for issuing the search warrant.
 
 
 36
 Although I believe that the warrant was invalid, I nevertheless agree that the evidence seized during the ensuing search was properly admitted. The exclusionary rule does not bar the prosecution's use of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." United States v. Leon, 468 U.S. 897, 900 (1984). I do not find the affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Id. at 923 (citations omitted) (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). While I feel that probable cause was lacking, obviously reasonable minds can and do differ on this issue. I therefore do not find this to be one of "those unusual cases" in which exclusion of evidence obtained pursuant to a warrant "will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918.[4] Accordingly, I concur in the court's holding that the evidence was properly admitted.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This statement is apparently the product of a liberal reading of United States v. Venema, 563 F.2d 1003 (10th Cir.1977). In that case, decided six years before the Supreme Court's decision in United States v. Place, 462 U.S. 696 (1983), the Tenth Circuit relied on the fact that the narcotics dog sniffing the air around Venema's locker was located in an area over which Venema exercised no control. The court held that "the defendant ... did not have any justifiable expectation of privacy in the areaway in the storage building" (emphasis supplied); it did not hold that the defendant had no reasonable expectation of privacy in the locker that he had rented. Venema, 563 F.2d at 1006
 
 
 [2]
 The Court in Place ultimately held that the defendant's Fourth Amendment right to be free from unreasonable seizure was violated when agents, acting without probable cause, detained his baggage for one and one-half hours in order to subject it to the canine sniff
 
 
 [3]
 I express no opinion on the Fourth Amendment consequences of a canine sniff of a person, see Horton v. Goose Creek Independent School District, 690 F.2d 470, 479 (5th Cir.1982), cert. denied, 463 U.S. 1207 (1983) (canine sniff of students in class is a search); United States v. Beale, 736 F.2d 1289, 1291 n. 1 (9th Cir.) (en banc), cert. denied, 469 U.S. 1072 (1984); a sniff conducted in such a manner as to amount to a "public accusation of crime," 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 2.2(f) at 84 (Supp.1984); see Doe v. Renfrow, 451 U.S. 1022, 1026 n. 4 (Brennan, J., dissenting from denial of certiorari); or a sniff conducted in an overbearing or harassing manner
 
 
 [4]
 Regardless of the good-faith exception in United States v. Leon, 468 U.S. 897 (1984), where "the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates," this court ought to rule on the validity of a warrant before reaching the good-faith issue. Id. at 925. As the Court noted in Illinois v. Gates, "[i]n order to ensure that ... an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." 462 U.S. at 239. See Leon, 468 U.S. at 924 ("There is no need for courts to adopt the inflexible practice of always deciding whether the officer's conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated.")