UNITED STATES of America, Plaintiff–Appellant,

v.

Adela MORALES–ZAMORA, Defendant–Appellee.

UNITED STATES of America, Plaintiff–Appellant,

v.

Javier OZUNA–FUENTES and Jose Manuel Morales–Diaz, Defendants–Appellees.

Nos. 89–2172, 89–2244.

United States Court of Appeals, Tenth Circuit.

Sept. 6, 1990.

David N. Williams (William L. Lutz, U.S. Atty., and Robert J. Gorence, Asst. U.S. Atty., with him on the brief), Asst. U.S. Atty., for plaintiff-appellant, U.S.

Nancy Hollander of Freedman, Boyd & Daniels, P.A., Albuquerque, N.M., for defendant-appellee Adela Morales–Zamora.

William E. Parnall, Albuquerque, N.M., for defendants-appellees Javier Ozuna–Fuentes and Jose Manuel Morales–Diaz.

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellee Javier Ozuna–Fuentes.

Before TACHA and EBEL, Circuit Judges, and DUMBAULD, District Judge.*

TACHA, Circuit Judge.

Defendants Adela Morales–Zamora, Javier Ozuna–Fuentes, and Jose Manuel Morales–Diaz were indicted on drug charges after a trained narcotics detection dog alerted to their vehicles while they were detained at a roadblock operated by Socorro, New Mexico police authorities. The district court in both cases granted the defendants' motions to suppress on the ground that the dog sniff was a "search" under the fourth amendment, U.S. Const. amend. IV, requiring a reasonable and articulable suspicion of drug-related criminal activity. We reverse.

I.

The factual circumstances of the two searches at issue are similar. On February 10, 1989, Adela Morales–Zamora (Zamora) and her seven-year-old son were traveling north on Interstate 25 when she was stopped at a roadblock operated by the Socorro, New Mexico police department. The stated purpose of the roadblock was to check drivers' licenses, vehicle registrations, and proofs of insurance. Zamora produced her driver's license, registration, and proof of insurance as requested. While one officer was checking her documents, another officer walked a trained narcotics-detection dog around the exterior of Zamora's car. The dog did not touch the car. Before the document check was finished, the dog alerted to the car. A subsequent search of the car revealed 126 pounds of marijuana hidden in luggage in the car's trunk.

On March 16, 1989, Javier Ozuna–Fuentes (Fuentes) was driving a van north on Interstate 25. His sole passenger was Jose Manuel Morales–Diaz (Diaz). Fuentes and Diaz encountered the same kind of Socorro police department roadblock as did Zamora. While they were waiting in line at the roadblock and before a check of their documents had been made, a narcotics-detection dog alerted to the van. The dog did not touch the van. After Fuentes stepped out of the van, an officer frisked him and found a .25 caliber handgun in the front right pocket of his pants. A subsequent search of the van revealed 30 pounds of

* The Honorable Edward Dumbauld, District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

marijuana concealed in a false compartment under the van's chassis.

Zamora later moved to suppress the evidence of contraband seized at the roadblock. After a hearing on March 31, 1989, the district court granted Zamora's motion to suppress, holding that when an officer has no reasonable and articulable suspicion of drug-related criminal activity, a canine sniff that occurs while the driver's documents are being examined violates the fourth amendment. *See United States v. Morales,* 714 F.Supp. 1146, 1154 (D.N.M. 1989).

Fuentes and Diaz also filed a motion to suppress. In a ruling from the bench, the district court in the Fuentes/Diaz case granted the defendants' motion to suppress for substantially the reasons expressed in the published opinion in the Zamora case. The government took an interlocutory appeal of the two district court rulings pursuant to 18 U.S.C. section 3731, which we consolidated on appeal.

### II.

Our standard of review is well-established. When reviewing a grant of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous. *See United States v. Butler,* 904 F.2d 1482, 1484 (10th Cir.1990). The ultimate determination of reasonableness under the fourth amendment is, however, a conclusion of law that we review de novo. *Id.*

### A.

As a preliminary matter, we turn to the defendants' argument that their detention by the Socorro police at the roadblock was an unlawful seizure because the roadblock's stated purpose was a pretext for searching the stopped vehicles for drugs. Both district courts below did not address the defendants' arguments that the alleged purpose of the roadblocks was pretextual, ruling instead that even if the reason for

the roadblock was not pretextual, the dog sniffs constituted illegal searches under the fourth amendment.[1] Because the district courts below assumed that the alleged purpose of the roadblock—to check for valid drivers' licenses, vehicle registrations, and proofs of insurance—was valid, we do also. Our holding today does not preclude the defendants from renewing their arguments concerning pretext to the district courts.

### B.

The Supreme Court has upheld the constitutionality of brief roadblock detentions not based on an individualized reasonable suspicion of criminal activity in the context of a twenty-five second average detention at a sobriety checkpoint, *see Michigan Dep't of State Police v. Sitz,* —— U.S. ——, 110 S.Ct. 2481, 2483–88, 110 L.Ed.2d 412 (U.S.1990), and a 3–5 minute average detention at an immigration checkpoint, *see United States v. Martinez–Fuerte,* 428 U.S. 543, 546–47, 562, 96 S.Ct. 3074, 3077–78, 3085, 49 L.Ed.2d 1116 (1976). This circuit previously has dismissed fourth amendment challenges against brief roadblock detentions not based on individualized reasonable suspicion of criminal activity where the purpose of the roadblock is to check for valid drivers' licenses, vehicle registrations, and proofs of insurance. *See United States v. Corral,* 823 F.2d 1389, 1392 (10th Cir.1987) (driver's license, car registration, and proof of insurance check), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988); *United States v. Lopez,* 777 F.2d 543, 547 (10th Cir.1985) (driver's license and car registration check); *United States v. Obregon,* 748 F.2d 1371, 1376 (10th Cir. 1984) (driver's license and car registration check); *United States v. Prichard,* 645 F.2d 854, 856–57 (10th Cir.) (driver's license and car registration check), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110

---

1. The district court in *Morales* found that it did not have to decide whether Zamora's initial stop was pretextual. *Morales,* 714 F.Supp. at 1148 n. 2. In the Fuentes–Diaz case the district court judge rendered his personal opinion that "had I been required to address that issue, I [would] conclude that [the alleged purpose of the roadblock] was pretextual," but went on to state that the issue was not properly before him. Rec. vol. III p. 94.

(1981). Assuming that the initial stop of the defendants was for the valid purpose of checking drivers' licenses, vehicle registrations, and proofs of insurance, we hold that the defendants' initial detention at the roadblock was not an unreasonable seizure under the fourth amendment.

■ To determine whether the defendants' vehicles were unlawfully detained after a lawful initial stop for the purpose of facilitating the canine sniff, we look to the timing of the events at the roadblock.[2] In both cases the narcotics-detention dog alerted to the defendants' vehicles *before* the Socorro police officer had completed his inspection of the defendants' documents. Because the defendants' vehicles were not detained beyond the measure of time required for the officer to complete his examination of the defendants' documents, the purpose for which we assume the defendants were lawfully detained, we hold that there was not a "seizure" of the defendants' vehicles for purposes of facilitating the canine sniff.

### C.

■ We now turn to the question raised by this appeal that we expressly reserved in *United States v. Stone*, 866 F.2d 359, 363 n. 2 (10th Cir.1989), namely, whether the police must have a reasonable suspicion of drug-related criminal activity before employing a narcotics-detection dog to sniff a vehicle already lawfully detained by the police. We hold that the dog sniff, under these circumstances, is not a "search" within the meaning of the fourth amendment and therefore an individualized reasonable suspicion of drug-related criminal activity is not required when the dog sniff is employed during a lawful seizure of the vehicle. *Accord United States v. Colyer*, 878 F.2d 469, 477 (D.C.Cir.1989) (dog sniff in train aisle outside private compartment); *United States v. Beale*, 736 F.2d 1289, 1292 (9th Cir.) (en banc) (dog sniff of checked

luggage at airport), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *United States v. Goldstein*, 635 F.2d 356, 361–62 (5th Cir.1981) (dog sniff of luggage in the possession of airline), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981).

*United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), is the leading Supreme Court case on canine sniffs as "searches." In *Place*, law enforcement officers at an airport seized the defendant's luggage to subject the bags to a "sniff test" by a narcotics-detection dog based on a reasonable suspicion that the luggage contained narcotics. The Court held that the canine sniff was not a "search" within the meaning of the fourth amendment:

A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particu-

---

**2.** We find irrelevant the testimony of the private investigator who at both suppression hearings related that when she encountered a similar roadblock operated by the Socorro police on a different date, she was detained approximately

two minutes after the officer completed his inspection so that the dog could sniff her car. We are concerned in this case only with the legality of the police conduct regarding Zamora, Fuentes, and Diaz.

lar course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* at 707.

The defendants argue, and the district courts below agreed, that *Place* requires an individualized reasonable suspicion of drug-related criminal activity before the police may subject a vehicle lawfully detained at a roadblock to a canine sniff. In reaching this conclusion, the district court found *Place* distinguishable on the ground that in *Place* the brief detention of the luggage necessary to subject it to the canine sniff was lawful because the seizure was based on a reasonable, articulable suspicion that a drug-related crime was being committed, whereas the seizure of Zamora's car at the roadblock was lawful for reasons wholly unrelated to suspected drug-related activity. *Morales*, 714 F.Supp. at 1150.

We disagree with the district court's reading of *Place*. *Place* analyzed whether a canine sniff was a "search" independently from the question of whether the detention of the luggage based on reasonable suspicion was justifiable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It was only *after* the Court found that a canine sniff was *not* a search, that the Court turned its attention to whether the 90–minute seizure of the luggage based on reasonable suspicion of drug-related activity satisfied *Terry*. The drug-related nature of the officer's reasonable suspicion was simply not a factor in the Court's determination that a canine sniff was not a search. *See Place*, 462 U.S. at 707, 103 S.Ct. at 2644; *United States v. Scales*, 903 F.2d 765, 768 (10th Cir.1990) (*Place* held that subjecting luggage to a canine sniff is not a "search" because both the manner of obtaining information and the information obtained are limited).

Moreover, in *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Court broadly construed *Place* in holding that a police investigatory tool is not a "search" if it merely reveals the presence or absence of contraband because the privacy interest in possessing contraband is not one that society recognizes as reasonable.

We must first determine whether [a cocaine field test] can be considered a "search" subject to the Fourth Amendment—did it infringe an expectation of privacy that society is prepared to consider reasonable?

The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities....

A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy.... [E]ven if the [test] results are negative—merely disclosing that the substance is something other than cocaine—such a result reveals nothing of special interest. Congress has decided—and there is no question about its power to do so—to treat the interest in "privately" possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably "private" fact, compromises no legitimate privacy interest.

This conclusion is dictated by *United States v. Place* in which the Court held that subjecting luggage to a "sniff test" by a trained narcotics detection dog was not a "search" within the meaning of the Fourth Amendment....

Here, as in *Place*, the likelihood that official conduct of the kind disclosed by the record will actually compromise any legitimate interest in privacy seems much too remote to characterize the testing as a search subject to the Fourth Amendment.

*Id.* 466 U.S. at 122–24, 104 S.Ct. at 1661–62 (footnotes and citations omitted).

Together, *Jacobsen* and *Place* make clear that there is no intrusion on legitimate privacy interests (and hence no "search")

where the only information revealed is limited to contraband items. *See Colyer,* 878 F.2d at 474 (*Place* and *Jacobsen* stand for the proposition that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed); *see also Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (second prong of inquiry defining a fourth amendment "search" under *United States v. Katz,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring), is whether the individual's expectation of privacy is one that society is prepared to recognize as "reasonable").

We find the factual circumstances of the two searches at issue to be legally indistinguishable from the facts of *Place.* The canine sniffs were made of the exterior of the defendants' vehicles and did not invade their homes or bodily integrity. The vehicles were detained lawfully in a public area, and the sniff took place in that public area. As in *Place,* the sniffs did not subject the defendants to any embarassment or inconvenience. Finally, the sniffs did not inconvenience the defendants in any manner. In each case the dog alerted to the vehicle before the officer's inspection of the driver's license, vehicle registration, and proof of insurance had been completed; therefore, the defendants did not experience any additional delay to facilitate the canine sniff.

Nevertheless, the defendants argue that they had a legitimate expectation of privacy in the odor of narcotics detected by the dog because this odor emanated from inside their vehicles, a private area protected by the fourth amendment. Consequently, the defendants contend, the dog sniff was akin to an unlawful sniff of their persons, *see Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470 (5th Cir.1982) (pre-*Place* decision holding that large dogs physically touching students with their noses is an unreasonable search), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983), or their private residence, *see United States v. Thomas,* 757 F.2d 1359 (2d Cir.) (dog sniff of exterior of an apartment building is an illegal search), *cert. denied,*

474 U.S. 819, 106 S.Ct. 66, 67, 88 L.Ed.2d 54 (1985).

We reject defendants' argument for two reasons. First, we are unpersuaded by defendants' analogies because there is a lesser expectation of privacy in a vehicle than in a home or one's bodily integrity. *Martinez–Fuerte,* 428 U.S. at 561, 96 S.Ct. at 3084. Second, we find that when the odor of narcotics escapes from the interior of a vehicle, society does not recognize a reasonable privacy interest in the public airspace containing the incriminating odor. *See Goldstein,* 635 F.2d at 361 (reasonable expectation of privacy does not extend to airspace around luggage).

In holding that police officers do not need an individualized reasonable suspicion of drug-related criminal activity before subjecting a vehicle lawfully detained to a dog sniff, we are cognizant of the concern that "[t]o so hold would give officers the right to subject vehicular traffic stopped at red lights to canine sniffs so long as the sniff was completed before the light changed." *Morales,* 714 F.Supp. at 1150; *see also Jacobsen,* 466 U.S. at 138, 104 S.Ct. at 1669 (Brennan, J., dissenting) (under majority's reading of *Jacobsen* and *Place,* "law enforcement officers could release a trained cocaine-sensitive dog ... to roam the streets at random, alerting the officers to people carrying cocaine"). This type of canine confrontation is not before us, however, and we reserve the question of the constitutionality of such hypothetical situations for another day.

### D.

The district court in the Fuentes–Diaz case also suppressed the evidence against Fuentes because he found that Fuentes had not voluntarily consented to the search of the van. The other district court judge suppressed the evidence against Zamora for the same reason. *Morales,* 714 F.Supp. at 1154. We need not reach the issue of consent because probable cause to search was supplied when the dog alerted to the vehicles. Under the "vehicle exception" to the general rule that searches are reasonable only if conducted pursuant to a valid

search warrant, *see United States v. Panitz*, 907 F.2d 1267, 1271 (1st Cir.1990); *United States v. Swingler*, 758 F.2d 477, 489–90 (10th Cir.1985), no warrant was necessary in this case for the search of the vehicles to be reasonable under the fourth amendment.

## III.

The order granting the defendants' motions to suppress is REVERSED.