UNITED STATES of America,
Plaintiff–Appellee,

v.

Adela MORALES–ZAMORA,
Defendant–Appellant.

No. 91–2244.

United States Court of Appeals,
Tenth Circuit.

Sept. 3, 1992.

Nancy Hollander, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, N.M., for defendant-appellant.

Robert J. Gorence, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before McKAY, Chief Judge, McWILLIAMS, Senior Circuit Judge, and EISELE, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

On February 10, 1989, Adela Morales–Zamora (Zamora) and her seven-year old son were traveling north on Interstate 25 when she was stopped at a roadblock in Socorro, New Mexico, by officers of the Socorro Police Department. She was told that the purpose of the roadblock was to check her driver's license, vehicle registration, and proof of insurance. As one officer checked these documents, another officer walked a trained narcotics-detection dog around the exterior of Zamora's vehicle.

Before the document check was completed, the dog "alerted" to the car. Zamora was advised that the dog had alerted to her car and the officer asked Zamora if she would consent to a search of her vehicle. Zamora then asked what would happen if she refused to sign the consent to search

* Honorable Garnet Thomas Eisele, Senior District Judge for the District of Arkansas, sitting by designation.

form which had been given her. The officer advised Zamora that their policy was to detain the vehicle and obtain a search warrant. Zamora then signed the consent to search form. The ensuing search disclosed 126 pounds of marijuana in the trunk of her car.

Thereafter, Zamora was charged in a one-count indictment with the unlawful possession of more than 50 kilograms of marijuana, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). Zamora filed a motion to suppress the use at trial of the marijuana taken from the trunk of her car. After hearing, the district court granted the motion to suppress, holding that when an officer has no reasonable and articulable suspicion of drug-related criminal activity, a canine sniff that occurs while the driver's documents are being checked, violates the Fourth Amendment. *United States v. Morales*, 714 F.Supp. 1146 (D.N.M.1989), rev'd, 914 F.2d 200 (10th Cir.1990).

From the order granting Zamora's motion to suppress, the government took an interlocutory appeal pursuant to 18 U.S.C. § 3731. On appeal, we reversed, holding that the police did not need individualized reasonable suspicion of drug-related activity before subjecting a lawfully detained vehicle to a canine sniff, since, in such circumstance, the sniff was not a search under the Fourth Amendment. In thus holding, we assumed, as did the district court, that the reason for the roadblock was not pretextual, and in connection therewith we expressly stated that our holding did not preclude Zamora from renewing on remand her argument of pretext. *United States v. Morales–Zamora*, 914 F.2d 200 (10th Cir.1990).

On remand, the district court held a hearing on Zamora's motion to suppress based on pretext. The chief of police for Socorro, John Trujillo, testified about their use of roadblocks in general, as well as the particular roadblock in effect on February 10, 1989, the date Zamora was arrested. At the conclusion of this hearing, the district court denied the motion to suppress, indicating, however, that it was a close call.

Zamora thereafter pleaded guilty to the charge, reserving her right to obtain appellate review of the district court's order denying her motion to suppress. She was then sentenced to 27 months imprisonment and this appeal follows.

At the hearing on Zamora's motion to suppress, Chief Trujillo testified that the police first set up a roadblock in Socorro in June, 1987, and that the operation was funded by the city itself. He stated that in about October, 1988, the city received a federal narcotics grant which funded 75% of the expense attendant to the roadblocks, including such items as overtime pay, canine expense, and capital outlay and equipment. Chief Trujillo said this federal funding continued until about July, 1990. When the federal funding was discontinued, the roadblocks were again funded by the city. There was some testimony that Chief Trujillo had made application for a grant from the state, although it is unclear whether the application was granted, or denied.

On cross-examination Chief Trujillo stated that he knew the city could not lawfully establish a roadblock which was only "looking for drugs," but believed that they could lawfully establish a roadblock for the purpose of checking drivers' licenses, vehicle registrations, and proofs of insurance. He admitted that in certain applications for grants he had stated that the "primary goal," or the "underlying purpose," of the roadblocks was to "look for drugs." At another point in his testimony, Chief Trujillo said he had dual reasons for the roadblocks: (1) to check drivers' licenses, vehicle registrations, and proofs of insurance; and (2) to check for the presence of contraband in vehicles through the use of sniffing canines.

Chief Trujillo also testified that initially a sniffing canine was present at every roadblock. He went on to testify that when the United States District Court granted Zamora's original motion to suppress, the city changed its roadblock procedure by continuing to stop vehicles to check for drivers' license violations, and the like, but that they would not have any canine at the

scene unless and until the officer had some cause to believe that the vehicle contained drugs. He added that after this court reversed the district court in *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir. 1990), the city reverted to its old practice of stopping all vehicles and having a canine sniff the area around the car as another officer was checking the driver's license.[1]

In denying Zamora's motion to suppress based on a pretextual roadblock stop, the district court commented as follows:

> The chief has testified that one of the reasons the roadblock was set up where it was was for people coming, say, back from the Owl Cafe or White Sands that live in Socorro.[2]

> This is about as close a question as you can get. I would say it's 51/49. But I cannot objectively say that the Socorro police did not have the right to set up the roadblock, that it was pretextual to the standpoint that Judge Burciaga did. They have a perfectly legitimate purpose in checking driver's license, insurance, et cetera, either primary or secondarily. They've acknowledged the drugs come into play. But I can't say that it's a pretext as did Chief Judge Burciaga.

> This is a question that can be certified to the Tenth Circuit. I'll certify it and put the trial off until after that certification comes back. If not, the case will be going to trial on my docket for May the 3rd. So the Motion to Suppress will be denied.[3]

When we review the denial of a motion to suppress, we accept the district court's findings of fact unless clearly erroneous. However, the ultimate determination of reasonableness under the Fourth Amendment is a conclusion of law, which we re-

view *de novo. United States v. Butler,* 904 F.2d 1482 (10th Cir.1990). The critical facts in the instant case are not in dispute, and we do not regard the district court as having made any findings of fact based on disputed evidence. Hence, our review of the district court's conclusions of law is *de novo.*

As we understand it, appellant agrees that roadblock stops for the purpose of checking a driver's license, and for checking the driver's sobriety, have been upheld against a challenge based on the Fourth Amendment. *See United States v. Lopez,* 777 F.2d 543, 547 (10th Cir.1985); *United States v. Obregon,* 748 F.2d 1371, 1376 (10th Cir.1984); and *United States v. Prichard,* 645 F.2d 854 (10th Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110, *reh'g denied,* 454 U.S. 1069, 102 S.Ct. 620, 70 L.Ed.2d 605 (1981). In *Prichard* we said that if in the process of stopping a car at a roadblock to check a driver's license the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes to what they had seen. *See id.* at 857. At the same time, the government agrees that under the Fourth Amendment it could not set up a roadblock for the sole purpose of subjecting all the stopped vehicles to a canine sniff of the exterior of the car. All of which narrows our problem.

In our view, the roadblock stop of Zamora's vehicle was a pretextual stop made for the purpose of detaining Zamora for a few minutes while a canine sniffed the vehicle for drugs. Zamora incidentally produced a valid driver's license, vehicle registration, and proof of insurance. Chief Trujillo testified, in effect, that the real reason for the

---

1. Chief Trujillo stated that the procedures he followed in the roadblocks were intended to comply with the requirements set forth in *City of Las Cruces v. Betancourt,* 105 N.M. 655, 735 P.2d 1161 (App.1987). *Betancourt,* which deals with a roadblock set up for the purpose of checking sobriety, lists eight guidelines for establishing a valid roadblock.

2. After counsel had concluded their examination of Chief Trujillo, the district court questioned the Chief briefly, during the course of

which the Chief stated that another reason for the roadblock was to check for drunken drivers.

3. *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir.1990) involved two other appellants, Ozuna–Fuentes and Morales–Diaz, Judge Juan Burciaga having granted their motion to suppress. On remand, Judge Burciaga granted their renewed motion to suppress based on pretextual roadblock stop. *See United States v. Ozuna–Fuentes,* 773 F.Supp. 1495 (D.N.M.1991).

roadblock was to interdict drug traffic, and that he believed the way to make a lawful search of the vehicle for drugs was to stop the vehicle for a check of the driver's license, and while that was being done have a narcotic-trained canine sniff the car. The fact that for a short time they continued to check for drivers' licenses without canines being present does not mean that the roadblock stop of Zamora was not pretextual. We are of course here concerned with the facts and circumstances of Zamora's stopping and search, not what occurred to someone else on another day.

■ As indicated, then, the issue here to be resolved is whether the primary reason for the roadblock was to check the driver's license or to check the vehicle for drugs. In view of Chief Trujillo's testimony that the primary or underlying reason for the roadblock on the day of Zamora's arrest was to check for drugs in the vehicle, it necessarily follows that the legal justification for the installation of the roadblock, that is the checking of driver's license and vehicle registration, was pretextual. In *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), not a roadblock case, we stated that a pretextual stop occurs when the police use a legal justification to make a stop (in *Guzman* the driver was not wearing a seat belt) in order to search a person or his vehicle, or interrogate him, for an unrelated and more serious crime for which they do not have the reasonable suspicion necessary to support a stop.

■ In *Guzman*, we also held that in determining whether a particular stop is, or is not pretextual, an "objective analysis" of the facts and circumstances, as opposed to a "subjective analysis" is the proper test. *Id.* at 1518. So, under *Guzman*, even if Chief Trujillo had testified that the primary purpose of the roadblock was to check Zamora's driver's license, such testimony would not in itself resolve the pretextual issue. But, as indicated, Chief Trujillo stated that the primary reason for the roadblock was to check for drugs, not drivers' licenses. This testimony finds support in the fact that narcotic-sniffing dogs were already at the scene of the stopping. And

of course in Zamora's case the officers had no suspicion that there was marijuana in the trunk of Zamora's car until the canine alerted.

In support of our analysis of the matter, *see Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1982) (plurality opinion). In that case, the Texas Court of Criminal Appeals had held that the seizure of a balloon containing narcotics from the interior of a vehicle which had been stopped during the course of a driver's license roadblock violated the Fourth Amendment in that the officer had to adjust his flashlight and "change his position" in order to see the balloon. On certiorari, the Supreme Court reversed the Texas Court of Criminal Appeals and held that the conduct of the officer in observing the interior of the car was not a search within the meaning of the Fourth Amendment. However, in so holding, the then Justice Rehnquist, speaking for the Court, went on to note that there was "no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in 'plain view' in the course of a check for drivers' licenses." *Id.* at 743, 103 S.Ct. at 1544. It would seem to follow that had the roadblock, which was designed to check for driver's licenses and registration, been but a pretext to look for "plain view" evidence of more serious crimes, the seizure of the balloon would have constituted a violation under the Fourth Amendment.

In accord with the rationale of Texas v. Brown, see *United States v. McFayden*, 865 F.2d 1306 (D.C.Cir.1989) where the District of Columbia Circuit upheld a roadblock whose principal purpose was traffic enforcement and affirmed the district court's order denying the defendant's motion to suppress the use at trial of narcotics that were "inadvertently discovered" during the process of checking a driver's license. In so doing, however, the D.C. Circuit indicated that a roadblock purportedly established to check drivers' licenses could be conducted in such a way as to indicate its "principal purpose" was to detect crimes unrelated to licensing, in which event "a

subterfuge might result in an infringement of Fourth Amendment rights...."

See also, *Galberth and Taylor v. United States*, 590 A.2d 990 (D.C.App.1991) where that court recognized "the police may constitutionally benefit from the 'spin-off' effect of an otherwise constitutional law enforcement program," but then went on to state that in determining the constitutionality of a particular roadblock it had to determine the "principal purpose" of the roadblock and thusly determine whether the real reason for the roadblock was to detect crimes unrelated to licensing. In this regard, in the instant case, Chief Trujillo candidly admitted that the primary reason for the roadblock was to interdict drug traffic.

██ Having concluded that the primary reason for the roadblock stop of Zamora's car was not to check her driver's license, but to ascertain, with the aid of an ever-present sniffing canine, whether she possessed drugs, it follows that the stop was pretextual and all that occurred thereafter was tainted. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In this regard, and by way of example, the government, on appeal, does not contend that Zamora's "consent" to the search was such an act of "freewill" as to somehow "purge" the taint of the earlier pretextual roadblock stop. *United States v. Guzman*, 864 F.2d 1512, 1520 (10th Cir. 1988).

In sum, the roadblock stop of Zamora's car was pretextual—the Socorro police were primarily interested in whether she was transporting drugs—not whether she had a valid driver's license. And of course the fact the police, with the aid of a canine, discovered 126 pounds of marijuana in the trunk of her car does not change the result. As Justice Scalia wrote for the Court in *Arizona v. Hicks*, 480 U.S. 321, 329, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987), "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Like the rains from heaven, constitutional rights fall on the just and the unjust.

The judgment is reversed and the cause remanded with direction that the district court grant Zamora's motion to suppress.