986 F.2d 1427
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jesse GUTIERREZ, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 92-4044.
 United States Court of Appeals, Tenth Circuit.
 Dec. 22, 1992.
 
 1
 Before LOGAN, Circuit Judge, TACHA, Circuit Judge, and CAUTHRON, District Judge.[1]
 
 ORDER AND JUDGMENT[2]
 
 2
 ROBIN J. CAUTHRON, District Judge.
 
 
 3
 Appellant, Jesse Gutierrez, was convicted after jury trial of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) & (b)(1)(C), and using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1291 & 1294(1). The issues raised in this appeal are: 1) whether the stop of the automobile in which defendant Gutierrez was a passenger was based on a reasonable, articulable suspicion and thus was not an unconstitutional pretextual stop; 2) whether the evidence was sufficient beyond reasonable doubt to convict Gutierrez of possession of cocaine with intent to distribute; and 3) whether the evidence was sufficient beyond reasonable doubt to convict Gutierrez of using and carrying a firearm in relation to a drug trafficking crime. After careful review of the briefs and having heard oral argument, we answer the questions in the affirmative and affirm.
 
 
 4
 At the evidentiary hearing on the motions to suppress, Sergeant Kenneth Pearce of the Salt Lake City Police Department testified that he was on patrol in his sector on August 7, 1991, in the area of the Alta Motel, which was a high crime area during the relevant time period. Pearce had thirteen years of experience and has been an undercover narcotics officer, a narcotics detective, a member of the vice squad, and a certified drug recognition expert and trainer. Pearce observed a silver Oldsmobile on three occasions before finally stopping the vehicle. On the first occasion at about 1:30 a.m., there were two people in the vehicle, which was entering the u-shaped entry of the Alta Motel. About an hour later, he saw the car leaving the motel with two occupants whom he could not identify. The driver of the vehicle, up to this point, had not committed any traffic or other violations of the law.[3]
 
 
 5
 The third instance when Pearce saw the vehicle was around 6:00 a.m. The car had four occupants and was parked on a side street near the Alta Motel at the entrance to an alley. As Pearce approached the vehicle in his marked police cruiser, the driver immediately turned on his lights, pulled away from the curb, and made a right-hand turn without a signal. Pearce immediately activated his police emergency lights and pulled the vehicle over. After the stop, as Pearce approached the vehicle from behind, he observed the passenger seated in the left rear seat of the car, defendant Gutierrez, make furtive movements during which he disappeared from view. Pearce then ordered the driver out and, subsequently, the front passenger. It was at this point that backup officer Cary Smith arrived at the scene. Pearce directed Smith to order Gutierrez and the right-rear passenger out of the vehicle. Pearce ultimately searched the vehicle and discovered a gun, money, and cocaine and heroin. All occupants of the vehicle appeared to have fresh puncture wounds on their arms, indicative of a recent intravenous injection of narcotics. Thereafter, all of them, except Gutierrez, were released, and no traffic citation was issued to the driver. In fact, Pearce candidly testified that he did not stop the vehicle because of a traffic violation; he remarked that he would have stopped the car regardless of any violation of the traffic laws.
 
 
 6
 Immediately after cocaine was found in the area of the vehicle where Gutierrez was seated, Pearce confronted him and handcuffed him. Gutierrez was not given any Miranda warnings, but was questioned as to why he was carrying a large amount of money and if he had been using drugs. Gutierrez then made incriminating statements.
 
 
 7
 On January 14, 1992, the trial court granted Gutierrez's motion to suppress the statements; however, the motion to suppress the physical evidence was denied. Gutierrez subsequently underwent a two-day jury trial.
 
 
 8
 At trial, on January 14, 1992, Pearce repeated his testimony concerning the stop of the vehicle. Pearce testified that the search of the vehicle revealed a fanny pack located in the left rear portion of the vehicle where Gutierrez was seated. The pack contained Gutierrez's identification, a key to a room at the Alta Motel, some jewelry, a small package of heroin, and approximately $1,050. Pearce further testified that he also observed a gun wedged in between the back rest and the seat portion of the vehicle next to the place where Gutierrez had been sitting. Pearce also stated there was a large package of cocaine and some heroin in the vicinity of the gun. The gun was not registered to Gutierrez and no fingerprints were taken to determine the owner of either the gun or the cocaine and heroin.
 
 
 9
 On the second day of trial, based on this evidence, Gutierrez moved for a judgment of acquittal on both counts. He asserted that the government's evidence was insufficient to sustain a conviction either for possession with intent to distribute or carrying and using a firearm in relation to a drug trafficking crime. The trial court denied the motion and the case was submitted to the jury, which subsequently found Gutierrez guilty on both counts.
 
 
 10
 On January 17, 1992, Gutierrez renewed his motion to suppress evidence. The trial court again denied the motion, finding that the officer had reasonable suspicion for the stop. Then, on March 16, 1992, the trial court sentenced Gutierrez to thirty months on Count I and sixty months on Count II, with the terms to be served consecutively, and, upon release, a three-year term of supervised release.
 
 
 11
 Gutierrez first argues that the stop of the vehicle was pretextual and was accomplished in violation of Gutierrez's right against unreasonable searches and seizures. See United States v. Guzman, 864 F.2d 1512, 1515 (10th Cir.1988). Gutierrez also contends that there were no articulable facts and individualized suspicion to support a Terry stop. See Terry v. Ohio, 392 U.S. 1, 21-22 & nn. 18-19 (1968). The officer's stop of the vehicle was not pretextual. Gutierrez makes much of the fact that the police officer candidly admitted that he did not stop the vehicle because of any traffic offense, but rather because he suspected some other crime. However, the officer did not rely on the driver's failure to signal in order to stop the vehicle, and therefore a pretextual stop like in United States v. Guzman, 864 F.2d at 1515, is actually not present in this case.
 
 
 12
 With regard to a Terry stop, that is, whether the officer had reasonable suspicion of illegal activity, our inquiry is not what the particular officer relied upon, but rather we must look at the evidence de novo from the perspective of a reasonable, trained, and experienced police officer. See Terry v. Ohio, 392 U.S. at 21-22; Brown v. Texas, 443 U.S. 47, 52 & n. 2 (1979) (requiring a reasonable suspicion to make an investigative stop from the perspective of a trained, experienced police officer who is able to perceive and articulate meaning in conduct that might appear totally innocent to the untrained observer); United States v. Morales-Zamora, 914 F.2d 200, 202 (10th Cir.1990) ("The ultimate determination of reasonableness under the fourth amendment is ... a conclusion of law that we review de novo.").
 
 
 13
 Warrantless police traffic stops are particularly fact sensitive and the underlying facts should be reviewed in detail. The facts here are: 1) thirteen years specific training and experience of the officer, observing 2) an out-of-state car,[4] 3) that was coming and going from a high crime area notorious for both drug deals and prostitution, 4) with different and varying numbers of occupants, 5) during the wee morning hours, 6) where an unsolved robbery had occurred the previous week; and 7) the car was parked on the street in this area at around 6:00 a.m., and then 8) pulled away at the moment the police cruiser came into view, while 9) failing to signal;[5] and 10) all of the rational inferences from these facts.
 
 
 14
 We find these facts are sufficient to support the conclusion that the officer had a reasonable suspicion of illegal activity at the time he turned on his emergency lights and initiated the stop.
 
 
 15
 Gutierrez can only muster a serious argument challenging any reasonable suspicion prior to the officer's activation of his police emergency lights, because after that the reasonable suspicion progressively crystallized into probable cause. Once the lights were on, the officer observed furtive movements by Gutierrez; the driver had no license and was uncertain of vehicle registration information; and there was the presence of visible track marks on the occupants and they had constricted pupils, implying the use of drugs by all occupants of the vehicle. A consent was given to search the vehicle; there were incriminating statements by Gutierrez of drug use and sales that were later suppressed; a knife was found in Gutierrez's pocket; a visible gun was spotted that was loaded; a fanny pack was found that contained Gutierrez's ID, heroin, and a substantial amount of suspiciously wadded and randomly placed cash; and still more drugs were found in the car. We conclude that the trial court's denial of the motion to suppress should be upheld.
 
 
 16
 Gutierrez argues that the evidence was insufficient to convict him of the distribution charge. He argues that he did not own the car, was not driving it, and did not have exclusive possession of it. Gutierrez thus contends that the government did not prove beyond a reasonable doubt the elements of knowledge, possession, and intent to distribute; and there was also no evidence of dominion and control of the drugs. Gutierrez's defense is that he was an admitted drug addict and the drug quantity only justified at most a charge of possession, not distribution. The evidence has been summarized as it relates to defendant's arguments and need not be repeated. We find that the jury was properly instructed, including being provided an instruction for the lesser included offense of simple possession. The jury could reasonably conclude that the drugs were initially on Gutierrez and that he distributed drugs to the occupants, and tried to hide them during the stop. In short, the jury had evidence from which it could find defendant's guilt beyond a reasonable doubt.
 
 
 17
 Gutierrez next argues that the evidence presented at trial was insufficient to sustain his conviction of using and carrying a firearm in relation to a drug trafficking crime. In this regard Gutierrez argues that no fingerprints were taken to establish ownership. The jury could conclude that the firearm was used as prohibited by section 924(c) because the defendant had ready access to it, the firearm was an integral part of the criminal undertaking, and it was carried through movement of the car. Its availability increased the likelihood that the undertaking would succeed. See United States v. Johnson, Nos. 91-7012, -7015 to -7017, --- F.2d ----, ----, 1992 WL 239333 at * 6 (10th Cir. Sept. 29, 1992).
 
 
 18
 The trial court's decision on the motion for judgment of acquittal is reviewed determining whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See id., at * 5 (" ' "Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." ' ") (quoted citations omitted). Clearly, there was evidence on which a reasonable jury could convict the defendant of the crimes charged.
 
 
 19
 Finally, Gutierrez argues that the indictment alleged that Gutierrez carried and used a firearm, and the prosecution did not prove both. However, the prosecution can file an indictment in the conjunctive, but need only prove its case in the disjunctive. Turner v. United States, 396 U.S. 398, 420 (1970).
 
 
 20
 Accordingly, the judgment is AFFIRMED.
 
 
 
 [1]
 Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [2]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [3]
 Pearce admitted that but for another stop in which he was involved at this time he would have pulled the car over for an investigation based on his suspicions. While the government conceded at oral argument that such a stop would have been much more difficult to justify, the point is moot because a stop never took place at that time. Therefore, any subjective misjudgment on the part of the officer regarding a hypothetical stop is simply irrelevant to the present inquiry, which must narrowly focus on purely objective factors
 
 
 [4]
 The fact that the vehicle had an out-of-state license plate when viewed in conjunction with a motel setting might be more indicative of totally innocent activity as opposed to anything illegal. However, when this factor is viewed in conjunction with the others, and particularly an out-of-state vehicle being repeatedly observed with different passengers in the early morning hours in an area well known for its prostitution and drug distribution activity, then it takes on a quite different perspective
 
 
 [5]
 Although the officer said that he did not rely on the failure to signal, this conduct is relevant to an objective evaluation of the totality of the circumstances. The commission of a minor traffic offense could support an inference that other criminal conduct may be present when viewed in the light of other relevant factors