**John M. MERRETT, Solomon Clayton, Jr., Cecelia A. Clayton, Plaintiffs–Appellants,**

v.

**James T. MOORE, Commissioner, FDLE, Leonard Mellon, Exec. Director, Florida Dept. of Highway Safety & Motor Vehicles, Lawrence Crow, Chief, Lakeland Police Dept., Jerald Vaughn, Defendants–Appellees.**

No. 93–2510.

United States Court of Appeals, Eleventh Circuit.

Feb. 26, 1996.

Edward W. Stafman, Stafman & Friedlander, Tallahassee, FL, for appellants.

Charlie McCoy, James A. Peters, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for Mellon, Butterworth and Dempsey.

John P. Booth, Asst. General Counsel, Charlie McCoy, Fla. Dept. of Law Enforcement, Tallahassee, FL, for Moore & Dempsey.

Reynolds E. Pitts, Jr., Fuller, Johnson & Farrell, P.A., Pensacola, FL, Patrick J. Farrell, Robert W. Ritsch, Fuller, Johnson & Farrell, P.A., Tallahassee, FL, for Cities of Lakeland, Mailtand & Largo Police Depts., Crow, Doyle, Vaughn and Ervin.

ON PETITION FOR REHEARING
EN BANC

Before TJOFLAT, Chief Judge,
KRAVITCH, HATCHETT, ANDERSON,
EDMONDSON, COX, BIRCH, DUBINA,
BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35–5), the Suggestion of Rehearing En Banc is DENIED.

BARKETT, Circuit Judge, dissenting, in which KRAVITCH and HATCHETT, Circuit Judges, join:

I respectfully dissent from the court's denial of *en banc* rehearing in this case, which makes us the first circuit court in the country to legalize roadblocks to intercept illegal drugs. Such a case deserves careful consideration by the entire court.

Heretofore, federal courts have allowed very few exceptions to the Fourth Amendment requirement that law enforcement officers possess at least articulable suspicion before stopping a vehicle: namely, at fixed checkpoints near border crossings to preclude illegal immigration, *United States v. Martinez–Fuerte*, 428 U.S. 543, 566–67, 96 S.Ct. 3074, 3086–87, 49 L.Ed.2d 1116 (1976); and at fixed and temporary checkpoints to

ensure compliance with *traffic-related laws,* such as driver license, vehicle registration and drunk driving laws, *see Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990); *United States v. McFayden,* 865 F.2d 1306, 1313 (D.C.Cir.1989).

This case, however, upholds temporary, unannounced roadblocks established on the pretext of ensuring compliance with traffic-related laws, but admittedly designed to intercept illegal drugs. While law enforcement officers checked driver licenses and vehicle registrations at the roadblocks, other officers walked drug dogs around the vehicles to sniff for illegal drugs. Motorists could not leave the line leading up to a roadblock without being chased down by an officer and subjected to a license and registration check and a drug-dog sniff of their vehicles. Illegal drugs were found in only one of the 1300 vehicles stopped.

During prohibition seventy years ago, the Supreme Court observed that "[i]t would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile *on the chance of* finding liquor...." *Carroll v. United States,* 267 U.S. 132, 153–54, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) (emphasis added). In my view, permitting law enforcement officers to stop every vehicle at a roadblock based on the mere possibility that one or more of the vehicles passing through will contain illegal drugs—evidence of a crime completely unrelated to highway safety—is similarly intolerable and unreasonable. The *en banc* court should carefully consider the ramifications of extending the roadblock exception to permit such roadblocks.

Likewise, the entire court should consider the following conclusions underlying the opinion:

I. A roadblock established on the pretext of ensuring compliance with traffic-related laws, but admittedly designed to intercept illegal drugs, is not unreasonably pretextual and therefore unconstitutional;

II. The reasonableness of a roadblock seizure can be determined under the balancing test of *Brown v. Texas,* 443 U.S. 47, 99

S.Ct. 2637, 61 L.Ed.2d 357 (1979), without giving any consideration to the roadblock's primary purpose—the interception of illegal drugs—or to the roadblock's effectiveness, or lack thereof, in serving that purpose; and

III. A motorist in a line leading up to a roadblock is not "seized" under the Fourth Amendment, where a law enforcement officer in a patrol car is visibly positioned to, and does, chase down motorists who leave the line, and subjects the motorists to a license and registration check and the car to a canine sniff.

I

The panel holds that "where the state has one lawful purpose sufficient to justify a roadblock [such as a license and registration check], that the state also uses the roadblock to intercept illegal drugs does *not* render the roadblock unconstitutional." *Merrett v. Moore,* 58 F.3d 1547, 1550-51 (11th Cir.1995). Under our longstanding precedent, however, when a law enforcement officer stops a car on the basis of a traffic violation to investigate the possibility that the car is carrying drugs, the stop is unconstitutional if a reasonable officer *would not have made the traffic stop* in the absence of the illegitimate motive. *See, e.g., United States v. Valdez,* 931 F.2d 1448, 1451 (11th Cir.1991); *Amador-Gonzalez v. United States,* 391 F.2d 308, 313 (5th Cir.1968).

In this case, the government conceded that it would not have established the roadblocks absent its desire to intercept drugs. The panel, however, finds our pretext cases inapplicable because they involved roving rather than roadblock stops. The panel reasons that because "one officer's individual discretion does not affect the determination of who is stopped [at roadblocks] ..., the pretext analysis, as set out in our [roving patrol] precedents, does not fit...." *Merrett,* 58 F.3d at 1550 n. 2.

Police officer discretion is not the primary concern of our pretext cases, however. While these cases recognize the danger posed by the discretion exercised by officers on roving patrol, they are grounded on the more fundamental concern that officers will

attempt to evade the requirements of the Fourth Amendment by using a traffic stop to detain someone for a purpose that would not lawfully support a detention. In both cases, "the police engage[ ] in a deliberate scheme to evade the requirements of the Fourth Amendment...." *Amador-Gonzalez,* 391 F.2d at 314 (quotation omitted). Moreover, the problem with discretion continues to exist with roadblocks, but at a higher level. A discriminatory purpose easily could lead to the establishment of roadblocks at the ingress or egress to particularly unfavored neighborhoods.

Although the Supreme Court has not directly considered the question of pretextual stops, it has indicated that this type of roadblock is unreasonably pretextual and therefore unconstitutional. In *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court reviewed a decision where a court had suppressed evidence seized at a roadblock on the ground that the officer had to change his position in order to see the evidence, allegedly rendering the plain-view doctrine inapplicable. *Id.* at 734-35, 103 S.Ct. at 1539-40. Holding that the plain view doctrine did apply, the Court emphasized that there was "no suggestion that the roadblock was a pretext whereby evidence of [a] narcotics violation might be uncovered in 'plain view' in the course of a check for driver's licenses." *Id.* at 743, 103 S.Ct. at 1544; *see also South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976) (upholding inventory search because "there is no suggestion whatever that this standard procedure ... was a pretext concealing an investigatory police motive").

As the Tenth Circuit explained in *United States v. Morales-Zamora,* 974 F.2d 149 (10th Cir.1992), when considering a roadblock identical to the ones before us, "[i]t would seem to follow [from the opinion in *Texas v. Brown* ] that had the roadblock [there], which was designed to check for driver's licenses and registration, been but a pretext to look for "plain view" evidence of more serious crimes, the seizure of the [evidence] would have constituted a violation under the Fourth Amendment." *Id.* at 152.

Applying *Brown*, the court reasoned as follows: "[h]aving concluded that the primary reason for the roadblock stop of Zamora's car was not to check her driver's license, but to ascertain, with the aid of an ever-present sniffing canine, whether she possessed drugs, it follows that the stop was pretextual and all that occurred thereafter was tainted." *Id.* at 153; *see also McFayden*, 865 F.2d at 1312–13 (observing that driver license roadblock could be conducted in a way indicating that its principal purpose was to detect crimes unrelated to licensing, in which case "a subterfuge might result in an infringement of Fourth Amendment rights").

## II

The panel also holds that the roadblock seizures were reasonable under the test set forth in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Under this test, the reasonableness of a seizure is determined by balancing "[1] the gravity of the public concerns served by the seizure, [2] the degree to which the seizure advances the public interest, and [3] the severity of the interference with individual liberty." *Id.* at 51, 99 S.Ct. at 2640. The Supreme Court has explained that "[w]hat is reasonable, of course, depends on *all* of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989) (emphasis added; quotation omitted).

In determining the reasonableness of the roadblock seizures, however, the panel does not consider *all* of the circumstances surrounding the seizures. Instead, it focuses *exclusively* on the driver license and vehicle registration aspects of the roadblocks, that is, on the public's interest in ensuring compliance with license and registration laws and on the roadblock's effectiveness in advancing that interest. *See Merrett*, 58 F.3d at 1551–53. By ignoring the primary purpose of the roadblocks—intercepting illegal drugs—and the ineffectiveness of the roadblocks in serving that purpose, the panel, in my view, fails to engage in a meaningful balancing under *Brown* and *Skinner*, and loses sight of the historical concern with protecting citizens from wholesale governmental searches and seizures in the absence of probable cause or reasonable suspicion.

## III

Finally, the panel concludes that the intrusiveness of the roadblocks was minimal, largely because it finds that the motorists were "seized" only after they reached the front of the line leading up to the roadblocks. The motorists were seized while *waiting* in line, however, if "the police conduct would have communicated to a reasonable [motorist] that the [motorist] was not free" to leave the line. *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991); *United States v. Mendenhall*, 446 U.S. 544, 551–55, 100 S.Ct. 1870, 1875–78, 64 L.Ed.2d 497 (1980).

The evidence showed that before reaching the actual roadblocks, some motorists waited in line for up to forty-five minutes (during rush hour) with no viable alternate routes and an officer in a chase car positioned to stop any motorist attempting to leave. The evidence further showed that motorists who left the line were stopped by an officer and subjected to license and registration checks and drug-dog sniffs of their cars. It seems pretty clear to me that this evidence, viewed in the light most favorable to the motorists, supports a finding that a reasonable motorist would not have felt free to leave the line.

The panel reasons that the presence of the chase car "just as likely assures motorists that they can expedite their confrontation with law enforcement by turning around." *Merrett*, 58 F.3d at 1552 n. 10. *Expediting* the encounter, however, is not the same as *ending* the encounter. In my view, freedom to leave the line means freedom to leave the line without being stopped. *See Bostick*, 501 U.S. at 439, 111 S.Ct. at 2389 (emphasizing that defendant may not have been seized because he might have felt free to "terminate the encounter"); *Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1878 (finding no seizure where defendant had no reason to believe "she was not free to end the conversation [with law enforcement officers] . . . and *proceed on her way* ") (emphasis added). Thus,

a reasonable factfinder could find that the motorists were seized not only at the roadblock, but also while waiting in line, significantly increasing the intrusiveness of the seizures.

I believe the panel further minimizes the intrusiveness of the roadblocks by limiting its intrusiveness analysis to the stop's duration. In *Sitz*, the Supreme Court confirmed that a stop's intrusiveness on motorists' privacy interests is not limited to the duration of the stop, but includes "the fear and surprise engendered in law-abiding motorists by the nature of the stop." *Sitz*, 496 U.S. at 452, 110 S.Ct. at 2486; *see also Skinner*, 489 U.S. at 619, 109 S.Ct. at 1414 (holding that reasonableness of seizure depends on *all* surrounding circumstances). The temporary, unannounced roadblocks in this case were set up in such a way that motorists could not avoid an encounter involving numerous officers handling aggressive police dogs; indeed, at least one motorist was attacked by a dog. The panel's analysis, however, does not consider the fear and surprise that such a sight would engender in a law-abiding motorist.

## IV

As the Supreme Court has observed,

Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. . Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.

*Delaware v. Prouse*, 440 U.S. 648, 662–63, 99 S.Ct. 1391, 1400–01, 59 L.Ed.2d 660 (1979). In my view, this opinion comes perilously close to permitting unfettered government intrusion on the privacy interests of all mo-

torists. For this reason and those discussed above, I would grant rehearing *en banc*.